# CHESTER R. NEWELL v. TOWN OF WHITINGHAM.

*Tax-Payer's Oath attached to the Inventory under the Act of 1880.*

The plaintiff interlined the oath attached to his inventory required by the tax law of 1880, with the words, " *to my best knowledge and belief.*" The listers refused to accept it and proceeded under the section of the statute, R. L. s. 326, which directs them, in case of a wilful omission to make, swear to, and deliver a legal inventory, to ascertain the amount of the tax-payer's taxable property, appraise the same, and double the sum so obtained, as a basis for the list; *Held*, that the action of the listers was lawful; that it was the duty of the plaintiff to take the oath as formulated in the statute; and that his refusal was wilful, though conscientious.

ASSUMPSIT. Plea, general issue with notice. Trial by jury, March Term, 1884, Windham County, ROWELL, J., presiding. Judgment for defendant.

The court *pro forma* directed a verdict for the defendant, that the question might be settled by the Supreme Court. But in doing this, the court stated: "We think that there is no ground for saying that Mr. Newell acted in this matter otherwise than in the utmost good faith and honesty, and that he really and honestly entertained the doubts and scruples that he said he did."

The words "to my best knowledge and belief" were inserted in the oath just after the words "taxable property." The required oath was:

"I, —— of ——, do solemnly swear (or affirm) that the above is a full, true, and correct list and description of all my taxable property, both real and personal, and all property which should be set in the list to me, and that I have set down only such debts as I am unconditionally bound to pay, to the amount of the deduction claimed; that my answers to these interrogatories are correct, and that I have not conveyed or disposed of any property or estate in any manner, or created any fictitious debt for the purpose of evading the provisions of law, or affecting the value and amount of my taxable estate. So help me, God."

The collector sold the plaintiff's property to satisfy the tax; and this action was brought to recover for the same.

The other facts are sufficiently stated in the opinion of the court, and in the dissenting opinion of Ross, J.

*C. B. & C. F. Eddy* and *H. N. Hix*, for the plaintiff.

In every essential particular, the oath tendered was all the act required. The plaintiff had a right to propose the form of the oath which he would take, if the same was thus binding upon him. 1 Greenl. Ev. 434; 1 Swift Dig. 739; 1 Stark. Ev. 20.

. This act, like all others, must have a reasonable construction. The object of the statute is: first, to provide revenue; second, to secure the citizen against injustice. It was not intended to confer upon listers lawful power to inflict upon a tax-payer inequality and injustice, for no other reason

than that he has been honest and exactly truthful. The case shows that the plaintiff was in honest and conscientious doubt as to whether he had a taxable interest in some wool and cattle, or in what might be due him ultimately in respect to them. It is not a mere formula of words that constitutes the law; its substance, the true rule of action prescribed. must be gathered from the object and spirit of the enactment, as well as the mere letter. *Holland* v. *Osgood*, 8 Vt. 280.

Not every verbal variance, either in the omission or addition of words, will vitiate. *Shrewsbury* v. *Mount Holly*, 2 Vt. 220; *State* v. *Bartlett*, 11 Id. 650;. *Blodgett* v. *Holbrook*, 39 Id. 341; *Ayers* v. *Moulton*, 51 Id. 115; *Charlestown* v. *Comrs.* 1 Allen, 199; *Lanesborough* v. *Comrs.* 131 Mass. 424; *Tonnele* v. *Hall*, 4 N. Y. 140; *Walker* v. *Cochran*, 8 N. H. 166; *Leach* v. *Blakely*, 34 Vt. 134; *Fairbanks* v. *Kittredge*, 24 Id. 13.

*J. Barrett*, for the defendant.

The plaintiff was subject to taxation; hence, if he can recover, it is because the tax was unlawful. If the listers accepted a different inventory than was provided by law, they were liable to forfeit $200. Sec. 14 of the Act of 1880.

It could not be unlawful for them to stand on the explicit requirement of the statute. Unless the statute required the listers to accept the oath, they had no authority to accept it. It is not the lawful function of this court to change the law of 1880, in respect to the oath. The language of the statute being explicit and plain, without ambiguity as to its meaning, there is no subject or occasion for construction. The current of authority, at the present day, is in favor of reading statutes according to the material and most obvious import of the language, without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. Courts cannot correct what they deem either excesses or omissions in legis-

lation. *Walker* v. *Harris*, 20 Wend. 555; Sedg. Stat. L. 243. The omission to make and deliver the proper inventory was wilful. *Smith* v. *Wilcox*, 47 Vt. 537.

Again, the authorities are uniform in marking the distinction between ministerial and judicial functions of listers. *Day* v. *Peasley*, 54 Vt. 312; *Wilson* v. *Marsh*, 34 Vt. 359; *Fuller* v. *Gould*, 20 Vt. 649.

The plaintiff's action compelled the listers to act judicially and construe the statute. The good faith with which the plaintiff omitted to make the prescribed oath does not avoid the consequences visited by the statute. Did the listers do anything unlawful? They obeyed the statute in every particular. The plaintiff must show the illegality of the tax. 44 Vt. 235; 38 Id. 221; 25 Id. 20; Cooley Tax. 566; Burr Tax. 441.

The opinion of the court was delivered by

VEAZEY, J. The listers of the defendant town were satisfied with the inventory of the plaintiff as filled out and tendered by him, with the exception of the interlineation in the oath, and for this reason only refused to receive it and administer the oath. The interlineation was in the words, "to my best knowledge and belief." By sec. 4 of No. 78, of the Acts of 1880, it was provided as follows: "Said inventories shall also contain the following oath," then followed the form just as printed in the blank inventory, and in which said interlineation was made by the plaintiff. Sec. 14 of said act was this: "If a lister accepts the inventory of a person not made out and sworn to as provided in this act, * * * he shall, for each inventory so received, * * * forfeit to the town or city where he resides the sum of two hundred dollars; and any tax-payer in such town, in the name of the town, may sue, and recover such penalty for the benefit of such town."

The plaintiff insists that the interlined oath was a substantial if not literal compliance with the requirements of

the statute and that is sufficient in the construction of an act of this kind.

The test is the legislative intent, to be deduced from the terms of the enactment as a whole. We think it is plain that the intention was to confer upon the listers the right to exact the oath prescribed. This is indicated by the provisions quoted and by others. The listers could not take up the inventories before April 1; and were limited to April 25 to complete and arrange in alphabetical order and lodge the personal lists of all the tax-payers in the clerk's office. Sec. 15. The variation of the form of the oath under a claim that it did not vary the substance or legal effect, would present practical difficulties to the listers that could not have been contemplated, in view of the liability and limitation upon them. The plaintiff's claim seems to come to this: Though in terms subject to a penalty for any deviation from the statute, yet the listers must stop and deliberate as a tribunal upon every qualification of oath offered, and decide whether it is a substantial variation or not; that they are liable to prosecution for the penalty if they decide *in favor* of the tax-payer; and are liable to suit against themselves or the town for the illegality of the tax, if they decide *against* the tax-payer; and this in respect to a statutory provision concededly not doubtful or uncertain in terms. Nor is this all. No one claims that the listers should receive an oath differing in substance or legal effect from the statutory form. Then why should the listers not be protected in requiring that form? Why should the legislature have intended that they should be troubled with the fanciful notions of every tax-payer in respect to form, especially when every deviation from the prescribed form would involve the difficult question as to whether it was matter of substance or form? Where the legislative enactment is plain and certain in terms, and nothing in substance is to be gained by a deviation, and substantial convenience and advantage, without injustice, is subserved by literal

compliance, we think such compliance was intended. It would seem to be novel to predicate legal error upon the action of listers for adhering to the plain provisions of the statute in the discharge of official duty, and declare a tax unlawful, where their right to proceed under the statute is conceded.

The view taken renders it unnecessary to pass on the question whether the oath tendered varied in substance from the oath prescribed.

The refusal of the plaintiff to make, swear to, and deliver an inventory as required, though conscientious, was intentional, therefore wilful in the sense in which that term is used in sec. 10. It being wilful the duty of the list-·ers to "ascertain and double" followed as provided in said section. The list and tax were therefore lawful; and the *pro forma* judgment of the County Court is affirmed.

Dissenting opinion by

Ross, J. The Act of 1880 is entitled "An act to equalize taxation." It seeks to accomplish this purpose by requiring every tax-payer to make in writing, and give in his list, or inventory of taxable property, under oath, and to therein furnish such information as will enable the listers to ascertain just what taxable property he owns, and what debts of all kinds are due to, and owing by him; by requiring the secretary of state to make and publish inventories, with suitable interrogatories on all subjects necessary to give the listers full information in regard to his taxable property, to which is added a prescribed form of oath to be subscribed and taken by the tax-payer; by requiring the listers to appraise the property inventoried at such a sum as they would appraise the same in payment of a just debt due from a solvent debtor; and by making them liable to a penalty of two hundred dollars if they receive and act upon an inventory not properly filled out and sworn to. To secure from each tax-payer the required inventory properly sworn to, the act

Newell v. Whitingham.

further provides that, "if he wilfully omits to make, swear to, and deliver said inventory, or to answer any interrogatory therein, or makes a false answer or statement therein, or if the listers have sufficient reason to believe that an inventory does not contain a full, true, and correct statement of the taxable property of the tax-payer filling out such inventory," then the listers are to find what taxable property he owns, as best they can, appraise the same at its just value in money, and double the sum thus obtained for the basis of his list. It is to be observed that this provision of the act is highly penal, and that the conditions which give the listers jurisdiction to impose the penalty are carefully stated. The provisions of the act, when considered together, as they must be, require the utmost good faith, honesty, and fairness in complying with its provisions, by the tax-payer, the secretary of state, and the listers, to the end that each person subject to taxation may bear his just and lawful proportion of the public burdens,—no more, no less. So to construe any of the provisions of the act, that an honest tax-payer, who has scrupulously complied in essence with all its provisions, shall be obliged to bear more than his just and lawful proportion thereof, is as gross a violation of the scope and spirit of the act, as is the non-enforcement of any of its provisions. The tendency and effect of both are to defeat the end and purpose of the act, equalization of taxation. The plaintiff seeks to recover of the defendant money which he claims he has been compelled to pay to it in violation of the provisions of the act, and hence wrongfully and illegally. That he undertook honestly and faithfully to comply with the provisions of the act, is unquestioned. It is admitted that he filled out an inventory to the full satisfaction of the listers; that he therein honestly and fully disclosed all his taxable property, and subscribed an oath thereto, and requested the listers to administer it to him, and accept the inventory. The listers refused to administer the oath, or to accept the inventory,

if the oath should be administered by any other magistrate, because in the prescribed oath, after the words taxable property, he had inserted, "to my best knowledge and belief." The refusal of .the listers to accept the inventory with this oath attached, properly· sworn to, was a waiver of any necessity for him to swear to it before another magistrate and then tender it to them. The only objection which the listers made to the inventory tendered was the fact that he .had inserted the words named into the oath. In all other respects the inventory was satisfactory to the listers, and, on this argument, no other objection is raised thereto. They did not object to administering the oath, but objected to the inventory with that oath duly subscribed and taken by him. If the oath subscribed and tendered was, in legal contemplation and essence, the oath required by the act, the plaintiff tendered a legal compliance with the act, to the listers, and did not wilfully omit to make, swear to, and deliver the required inventory. Hence the single question is, was the oath tendered, in legal essence and force, the oath prescribed by the act? If the added words abated, or lessened, the legal essence and force of the oath in any particular, he did so omit, and the listers both had authority and were under a duty, in common language, to doom him. But they were under no such duty, and had no such authority, if the added words did not lessen or abate a scintilla from the legal force and effect of the oath prescribed by the act. A fair way to test whether the added words did lessen or abate from the legal force and effect of the prescribed oath, is, to add them to the answer of each interrogatory in the inventory. Inserting them into the body of the oath was in legal effect adding the same words, at the end of each answer to the several interrogatories, contained in the inventory. It is to be observed that the words inserted are, "To my best knowledge and belief," not or belief. The interrogatories are of two kinds; those capable of an exact numerical answer based upon exact

knowledge; and those, requiring an answer founded on judgment and belief, arising from knowledge gained by inquiry. Of the first kind is interrogatory 3: "What number of horses, over four months old, were owned by you on the first day of April, 1881?" This is capable of a definite numerical answer based upon knowledge. His answer is of that character, six. Now suppose, in fact, he then owned seven such horses, but had no knowledge that he owned the seventh; that some one unbeknown to him, had on the 31st day of March made an absolute gift to him of the seventh horse and delivered it to a third person for him, would his answer, made under the obligations of the prescribed oath, have rendered him guilty of perjury in respect thereto? Manifestly not; because his want of knowledge of his ownership of the seventh, bereft his answer, false in fact, of the corrupt mind and purpose necessary to the commission of perjury. Would his conscience have been touched by the answer, false in fact? Certainly not; because he did not know of its falsity. If he had had knowledge of such ownership, he would have been guilty of perjury, and his conscience, if any he had, have been touched, because of the possession of such knowledge. Now suppose he had added, so that his answer read, "Six, to my best knowledge and belief." Would anything have been taken from the legal force and effect of the answer made under the prescribed oath, either on the score of perjury, or touching his conscience? Not one scintilla. If he had known that he then owned seven, both the monitions of conscience, if any he had, and a liability for perjury would have inhered in the answer. In fact the words, "to my best knowledge and *belief*," might have brought a new element into the answer, touching the conscience, that of belief, which may exist short of actual knowledge, and thus have added to, rather than abated from, the binding force of the answer. The second class of interrogatories call for an answer based upon judgment and belief, having their origin in best

knowledge gained by inquiry. Of this character is inter-
rogatory 8—"What amount of debts due from solvent
debtors, whether on account, note, or contract, bond, mort-
gage, or other security, and whether then due, or to become
due thereafter, did you own on the first day of April,
1881?" The subject matter inquired about,—the solvency
of his debtors,—and the language of the interrogatory
alike, legitimately and impliedly call for an answer, true to
the plaintiff's best knowledge and belief. The exact truth,
stated with mathematical precision, cannot be given to
such a question. The plaintiff could only answer it accord-
ing to his best knowledge and belief. As to the amount due
him from such debtors, he might be able to answer from his
knowledge, with accuracy; but whether such debtors were
in truth, solvent, could only be known to him and answered
as a matter of belief and judgment, based upon the best in-
formation he could gain by faithful inquiry. Hence, if he
answered it with a definite, numerical sum, the answer all
the same implied that it was true to his best knowledge and
belief. If he gave in his answer his honest belief in regard
to the solvency of his debtors, he could not be convicted of
perjury, how far soever from the truth, in fact, the answer
might be. Nor could his conscience be touched in regard
thereto, beyond such belief. The addition of these words
to his answers to this class of interrogatories would not
lessen their legal quality, as regards perjury or conscience.
Hence the insertion of the words by him in the body of the
oath subscribed, did not lessen, nor abate, one particle from
the moral or legal quality, force, or binding effect, of any
of his answers to either kind of the interrogatories, but if
anything added a moral force to his answers to the first
class of interrogatories. Hence, I conclude, that the plaint-
iff tendered to the listers a full and perfect moral and
legal compliance with the force, spirit, and requirements of
the act, and that the listers had no right to refuse to ad-
minister the oath tendered, nor to reject the inventory

tendered, nor had they authority under the act to doom him for wilfully omitting to make. swear to, and deliver a full and complete inventory of his taxable property, as required by law. The taxes assessed against him were, therefore, assessed without the sanction of law, and illegal; and he is entitled to recover back what the town thus holds illegally from him. But it is urged that the listers were required not to accept improper inventories under heavy penalties. What if they were? Is that any excuse for refusing a proper one? —that the plaintiff had no legal right to ask them to receive one attested by an oath which varied in letter even from the prescribed oath; that the plaintiff was bound to know the law, and that the prescribed oath only required him to answer the second class of interrogatories according to his best knowledge and belief. The listers, too, as adminis- trators of the law, were bound to know this, and that the law gave them no legal authority under the circumstances to doom him. Their want of this knowledge did not add to their authority to inflict the penalty of doubling his list. The doubling process is highly penal, and to be resorted to only in a clear case of wilful omission on the part of the tax-payer. Besides, consider the circumstances: The law was new, and had elicited a good deal of discussion, especially, the iron-clad oath, as it was called. The plaint- iff was a plain, conscientious farmer, unlearned in the in- tricacies of the law. He fully disclosed to the listers the state of his property, and explained to them the purchases of the cattle and of the wool, and said that he did not know, but if he should unintentionally make a mistake, as to whether anything would turn out to be due him from those purchases, the prescribed oath might not only cause him to offend against his Maker, but expose him to a conviction for perjury. While the listers told him, that they thought he could safely take the prescribed oath to his inventory, they absolutely refused to accept it with the added words inserted in the body of the oath, thereby declaring by

their acts, plainer than speech, that he might be guilty of perjury if he made a mistake in the matters named. Moreover they were administrators of the law, and were supposed to know what it demanded. Under these circumstances, is it strange, that a simple-minded, conscientious man, unlearned in the law, should prefer to be doomed, rather than to incur the risk of being damned? In my judgment, the listers ought to have administered the oath he tendered, and have accepted the inventory. The inventory and oath tendered, being a full and complete compliance with every moral and legal requirement of the law, and lacking only in the prescribed words of the oath, to hold that the plaintiff was liable to be doomed for a violation of the law, to my mind, is "to tithe mint and cummin," which the law requires not, and to pass over judgment, and justice, in its administration to an honest, conscientious, but unlearned tax-payer; to sacrifice substance to shadow, to disregard the vital principle, "the equalization of taxation," in order to stick to the letter of the law, even to the crossing of the t's and the dotting of the i's; to make the law designed to further justice, and an even distribution of the public burdens, an instrument of oppression, wrong, and injustice, and all this, simply because the listers, the administrators of the law, did not know their duty. Because the listers did not know their duty, I say; for, it has not been contended, nor do I think it could be reasonably contended, that the listers would nave incurred any penalty under the law, by administering the subscribed oath to the plaintiff and then accepting the inventory tendered them. Why should their ignorance of the law, and unfounded fears for themselves, be made a penal offense in the plaintiff, and be visited upon him by more than doubling his just taxes? I cannot consent to such a construction and enforcement of the law. Heretofore this court has always held, that a substantial compliance with the prescribed forms of the statute law, was

all that was required, and such have been the holdings of all other courts of last resort, so far as I have observed. I think such a compliance is all that should be required of honest, conscientious tax-payers under this law. I would reverse the *pro forma* judgment of the County Court and render judgment for the plaintiff.