STATE *v.* BURLINGTON DRUG COMPANY.

November Term, 1910.

Present:   ROWELL, C. J., MUNSON, WATSON, AND HASELTON, JJ.

Opinion filed January 27, 1911.

*Intoxicating Liquors—Construction of Statutes—Licenses—Revo-*
*cation—Effect—Constitutional Law—Cruel and Unusual Pun-*
*ishments—Punishment Proportioned to Offence—Liability on*
*Liquor Bond—"Wilful".*

It seems that the word "fines", as used in Ch. 2, § 32, of the Constitution of this State, requiring that "all fines shall be proportioned to the offences", connotes all punishments, whether by fine, imprisonment, forfeiture, or disqualification.

Article 18 of our Bill of Rights, by exacting from legislators and magistrates a constant regard for, and a firm adherence to, the fundamental principles of justice and moderation in the making and execution of laws, by necessary implication prohibits excessive fines and cruel and unusual punishments.

P S. 5121, providing that a license to sell intoxicating liquors shall not be granted to one whose license has been revoked for any cause, nor to one who has been convicted of violating the law "relating to illegal selling, keeping, exposing, or transporting intoxicating liquor", does not apply to fourth-class licensees under No. 145, Acts 1906, so as to disqualify them from holding a fourth-class license after conviction for selling intoxicating liquors without furnishing samples thereof

to the Secretary of State for inspection, as required by No. 145, Acts 1906.

The revocation, for disregard of prescribed restrictions, of a license to sell intoxicating liquors, without repaying to the licensee any part of the license fee, infringes no constitutional right of the licensee; for such license is not a contract, but only a permit subject to revocation at any time for a disregard of the prescribed restrictions, or because of a change of policy in the exercise of the State's police power.

The fine of $200 for the first offence and $500 for each subsequent offence, prescribed by P. S. 5141 on conviction of a liquor licensee of the fourth-class for selling intoxicating liquor of a quality other than of the sample furnished the Secretary of State for inspection, and the revocation of the license prescribed by P. S. 533, on conviction of such licensee for selling intoxicating liquor of which no samples have been furnished the Secretary of State, as required, when considered together as an inseparable incident to a conviction of a fourth-class licensee for selling intoxicating liquor without having furnished the required sample to the Secretary of State, do not violate Ch. 2, §32, of the Constitution of this State, requiring that "all fines shall be proportioned to the offences", nor the provisions of the Federal Constitution prohibiting excessive fines and cruel and unusual punishments, the deprivation of property without due process of law, or the denial of the equal protection of the laws.

The eighth amendment of the Federal Constitution, prohibiting excessive fines and cruel and unusual punishments, does not apply to the state governments, nor was it made so applicable by the adoption of the fourteenth amendment.

Where police legislation penalizes an act or omission that might otherwise be done or omitted without culpability, intention is not an element of the offence.

Since the bond required by P. S. 5131 to be given by fourth-class liquor licensees prescribes that the obligor shall become liable to the designated penalty if the principal "shall wilfully violate any of the conditions or prohibitions of" the license, the bond is not forfeited unless the licensee intentionally violates the liquor law, even though he is convicted and fined for a violation thereof, as the word "wilfully" means intentionally and by design.

INFORMATION charging the illegal sale of intoxicating liquors. Plea, not guilty. Trial by jury waived, and trial by court, on an agreed statement of facts, at the September Term, 1909, Chittenden County, *Powers*, J., presiding. The respondent adjudged guilty and fined. The respondent excepted. The opinion states the case.

*Darling & Mower* for the respondent.

P. S. 5141, 5143 must be construed together and considered as inflicting their joint penalties on respondent; and, when so considered, they reveal the imposition of a penalty that violates Ch. 2, § 32, of our State Constitution which requires that "all fines shall be proportioned to the offences." In that provision the word "fines" refers to punishments of any kind imposed on the conviction of an offence. 13 Am. & Eng. Enc. 53, 1074; 3 Words and Phrases, 2811; *Southern Express Co.* v. *Walker*, 92 Va. 59; *Chicago & Alton R. R. Co.* v. *People ex rel. Koerner*, 67 Ill. 1, 16 Am. Rep. 599; *Hanscomb* v. *Russell*, 77 Mass. 373. It is well settled that the courts will interfere to secure a respondent from the imposition of cruel and unusual punishments. *State* v. *Driver*, 78 N. C. 423; *Central etc. Co.* v. *R. R. Com'rs of Alabama*, 161 Fed. 925; *State ex rel. Garvey et al.* v. *Whitaker*, 17 So. 457; *People ex rel. Robinson* v. *Miner & Haug*, 37 N. W. 21; *Luton* v. *Palmer*, 37 N. W. 701; *People* v. *Jones*, 89 N. E. 752.

*Henry B. Shaw*, State's Attorney, for the State.

The statutes in question are not repugnant to Ch. 2, § 32, of our State Constitution, as being a fine not proportioned to the offence. *State* v. *O'Neil*, 58 Vt. 140; *State* v. *Intoxicating Liquors*, 58 Vt. 594; *State* v. *Hodgson*, 66 Vt. 134; *State* v. *Constantino*, 76 Vt. 192; nor are the statutes in violation of the fourteenth amendment of the Federal Constitution because of the provision requiring the revocation of the license without the repayment to the licensee of any part of the license fee. *State* v. *Gibbs*, 82 Vt. 526; *Lacroix* v. *Fairfield County*, 50 Conn. 321; *Voight* v. *Excise Commissioners*, 59 N. J. L. 358; *State* v. *Seebold*, 192 Mo. 720; *Kreuger* v. *Colville*, 49 Wash. 295; *Young* v. *Blaisdell*, 138 Mass. 344; *Com.* v. *Brothers*, 158 Mass. 200; *Brock* v. *State*, 59 So. 580; *Wallace* v. *Reno*, 27 Nev. 71; Black on Intoxicating Liquors, §189.

HASELTON, J. The respondent, a corporation, was the holder of a liquor license of the "fourth class"; that is, it was licensed to sell intoxicating liquor at wholesale. While holding such license it made a sale of certain cordials that were intoxicating

liquor, of which it had furnished no samples to the secretary of state for inspection, as it was required to do under the provisions of sections 5131 and 5132 of the Public Statutes.

P. S. 5141, provides that a licensee of the fourth class who sells any liquor of a quality other than that of a sample furnished to the secretary of state for inspection shall be fined for the first offence two hundred dollars, and for each subsequent offence five hundred dollars. The respondent was prosecuted under this section. The facts above stated were agreed upon and the respondent was adjudged guilty and was sentenced to pay a fine of two hundred dollars together with the cost of prosecution. "The respondent," to quote here from the bill of exceptions, " objected and excepted to the rendition of said judgment and imposition of sentence thereon on the ground that the several statutes prescribing the penalties and forfeitures for the offence alleged in the information are unconstitutional and void under the Constitution of the United States and of the State of Vermont in that the penalties and forfeitures so prescribed are not proportioned to the offence but are excessive, cruel and unusual, contrary to the eighth and fourteenth amendments to the Constitution of the United States, and section 32, of chap. 2, of the Constitution of Vermont, and upon the further ground that said several statutes deprive the respondent of property without due process of law and deny it the equal protection of the laws, in violation of the fourteenth amendment of the Constitution of the United States."

The sections of the Public Statutes directly referred to in this exception are 5141, under which the respondent was convicted and fined, 5143, 5144, 5117, 5128 and 5131. The provisions of 5141, so far as they are relevant to this case, have been sufficiently stated. §5128 fixes the fee for a license of the fourth class at seven hundred and fifty dollars. §5143 provides that if a licensee of the fourth class is found guilty of the offence of which the respondent was convicted the attorney general shall notify the secretary of state of such conviction and that the secretary of state shall forthwith revoke the license. §5121, as construed by the respondent, disqualifies one whose license has been so revoked from thereafter holding a license..

§5117 and §5131, taken together, provide for the giving of a bond to the State by a licensee of the fourth class in the sum of three thousand dollars. These sections will be further commented on. §5144 provides, among other things, that upon the conviction of a licensee of the fourth class of the offence of which the respondent was convicted the attorney general shall at once proceed to collect the amount of the bond from the securities of the licensee. The respondent does not contend that the section under which the respondent was convicted is unconstitutional considered by itself and without reference to the other sections above referred to; but it contends that these other sections are intended to act automatically upon a conviction such as was had here, and that all the sections referred to must be construed together in determining the penalty prescribed for the offence, and that when so considered the aggregate penalty is disproportionate to the offence, and so disproportionate as to render the statutory provisions in question void on the ground of conflict both with the Constitution of this State and that of the United States.

The claim that the conviction of the respondent disqualifies it from hereafter holding a license is ill-grounded. P. S. §5121, under which the claim is made, relates wholly to licenses by the boards of license commissioners of the several towns. It provides that no license shall be granted to a person not a voter of the town nor to a person under twenty-five years of age, nor to a person whose license in a town has been revoked. No. 145 of the Acts of 1906, which did not take effect until March 1, 1907, provided that licenses of the fourth class, licenses to sell at wholesale, should be granted not by the license commissioners of the town but by the secretary of state; and it provided that such licenses might be granted to citizens, or corporations, of this State, or of any other state, or of any other country. It provided that all fees for such licenses should be payable to the State, that the number of licenses which might be granted in a town should not be affected by the residence therein of licensees of the fourth class. It provided penalties for illegal acts by such licensees not corresponding to the penalties under the general liquor law. Various provisions applicable to other

licensees are not applicable to those holding a license to sell only at wholesale to retail dealers; and while the law provides that a license of the fourth class shall be revoked and the unused portion of the license fee shall be forfeited upon the conviction of the holder of the license of the offence of which the respondent was convicted, it stops short of providing that such licensee shall be disqualified from thereafter holding a license. The whole situation is made clear when No. 145, Acts of 1906, which relates wholly to licenses of the fourth class, is read by itself.

The revocation of the license without a repayment to the licensee of any portion of the sum paid by him for the license infringes no constitutional right, for the license is not a contract but a permit to sell subject to restrictions, and from its very nature is subject to revocation in consequence of a disregard of such restrictions or in consequence of a change of policy on the part of the government in respect to the exercise of the police power. *State* v. *Gibbs*, 82 Vt. 526, 74 Atl. 229, 24 L. R. A. (N. S.) 555.

We do not think that the fine provided by statute for the offence of which the respondent was convicted, and the revocation of the license, treating it as an incident to the conviction, when considered together and treated as inseparable, contravene any provision of our State Constitution or of the Federal Constitution.

The questions which arise in connection with the forfeiture of the bond of three thousand dollars are the ones to which the arguments of counsel have been chiefly directed.

The provision of Article VIII, in amendment of the Federal Constitution, forbidding excessive fines and cruel and unusual punishments, was not directed to and does not operate upon the State government. *Pervear* v. *The Commonwealth*, 5 Wall. 475, 18 L. Ed. 608.

After the adoption of the fourteenth amendment the view was taken by Justices Harlan and Field, and perhaps by Mr. Justice Brewer, that by virtue of that amendment the protection guaranteed by the eighth was interposed against the State government. See dissenting opinions in *O'Neil* v. *Vermont*, 144 U. S.

323, 337, 366, 371, 12 Sup. Ct. 693, 36 L. Ed. 450.   But this view did not prevail in the case just cited and has not since been recognized.  *Jack* v. *Kansas,* 199 U. S. 372, 26 Sup. Ct. 73, 50 L. Ed. 234; *Brown* v. *New Jersey,* 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119; *State* v. *Hodgson,* 66 Vt. 134, 28 Atl. 1089.

The provision of our State Constitution to which we have been particularly referred is that "all fines shall be proportioned to the offences."

Historically the provision of the Federal Constitution has regard to the language of the Bill of Rights of 1689, while the provision of our Constitution respecting disproportionate fines reflects rather the language of Chapter 14, of Magna Charta, where it is said that for a small offence a freeman shall not be amerced otherwise than according to the measure of such offence and for a great offence according to the magnitude thereof; and where it is said of Earls and Barons that they shall not be amerced except after the manner of their offences and that no ecclesiastical person shall be amerced except in accordance with the degree of his offence.   See Runnington's Ruffhead's Statutes at Large, vol. 1.

Nathaniel Chipman, writing in 1792, says that the word "fines" as used in the constitutional provision now under consideration is not to be understood of pecuniary mulcts only but that it is to be taken as synonomous with "punishments." N. Chipman, Reports & Dissertations, 134.

This is said not in an opinion but in one of the dissertations; but in view of the influence of Nathaniel Chipman in the establishment of our institutions, the statement of his, just referred to, might well be taken as an authoritative contemporaneous exposition of the meaning of the constitutional provision to which it relates.   While the provision suggests the immunities of the Great Charter, its language seems due rather to the influence of Beccarria whose treatise on Crimes and Punishments was translated into English in 1768, and was read with avidity by lawyers and jurists everywhere in the latter part of the eighteenth century and the earlier part of the nineteenth. This is no fanciful conjecture for, in discussing the subject of penal laws, Chipman acknowledges the influence of the Italian

writer, quotes from his work, and says in precise terms; "The· world is more indebted to the Marquis Beccarria for his little· treatise on Crimes and Punishments than to all other writers. on the subject." Chip. Princip. Gov't. p. 214.

But if it is not warrantable to say that the word "fines"· in our Constitution refers to all punishments whether by fine· or imprisonment or forfeiture or disqualification, still our Bill of Rights is not behind any in its assertion of the fundamental principles of free government, and the prohibition of excessive· fines and cruel and unusual punishments is, in effect, found in Article 18, of the Bill of Rights, which exacts from legislators· and magistrates a constant regard and firm adherence to the fundamental principles of justice and moderation in the making and in the execution of laws.

The framers of our Constitution considered, as did the Eng-- lish Parliament in 1689, that protection against excessive fines. and cruel and unusual punishments was one of the "true, ancient and indubitable rights and liberties of the people," and that it should so " be esteemed, allowed, adjudged, deemed, and taken to be." 1 William & Mary, Session 2, Chap. 2, §§1 and 6.

Therefore, when our Constitution declares that the funda-- mental principles of justice and moderation shall be constantly regarded and adhered to by legislators and magistrates, it asserts. the right of the people to protection against excessive fines and cruel and unusual punishments as emphatically as it could have· done by less comprehensive words.

Hence, decisions construing constitutional provisions ex-- pressly prohibiting cruel and unusual punishments are in point in this discussion, and a recent decision of the Supreme Court of the United States dealing with the matter with great thorough-- ness and with reference to numerous cases cannot be overlooked. We refer to *Weems* v. *United States*, 217 U. S. 349, 30 Sup. Ct. 544, a case which arose in the Philippine Islands. By the· instructions of the President to the Commissioners to those Islands, and afterwards by an act of Congress there was estab-- lished for the guidance of the government there a Bill of Rights. which contained a provision prohibiting excessive fines and cruel.

and unusual punishments. 5 Thorpe's Charters & Constitutions, pp. 3158, 3162, 3165, 3166, 3167.

The Philippine Commissioners undertook to confirm as the law of those Islands some of the provisions of the penal code of Spain. It was provided that for the offence of making a false entry in an official document the offender should suffer "cadena temporal" for a period of from twelve years and a day to twenty years. To be "en la cadena" means imprisonment and something more. Escriche, Diccionario de Legislacion y Jurisprudencia, Art. "Cadena".

In the penal code of the Islands it means imprisonment at hard and painful labor, with a chain always attached to the ankle and the wrist, and the denial of any assistance from without the penal institution. Certain other penalties called "accessories" are imposed upon one who is sentenced to "cadena temporal".

There are civil interdictions during the term of imprisonment, surveilance on the part of the authorities throughout life, and perpetual and absolute disqualification to vote, to hold office or to acquire honors.

Weems was sentenced to fifteen years of "cadena" with the "accessories" and to pay a fine, and his sentence was affirmed by the supreme court of the [Islands. In the Supreme Court of the United States it was held that the prohibition of cruel and unusual punishments incorporated into the fundamental law of the Islands must be given the same meaning as it has in the Constitution of the United States from which it was taken, and that the provision of the penal code of the Islands under which Weems was sentenced was repugnant to the fundamental law established there. As was natural, such a conclusion was not reached without full and thorough examination of the question involved and of the authorities bearing upon it, and so a reference to that case, to the opinion of the Court, the dissenting opinion, a marginal collection of authorities, and the abstracts of the briefs, is, in effect, a reference to substantially the whole body of decisions upon the question of what are excessive fines. and cruel and unusual punishments, which, as we have seen, are obnoxious to our State Constitution.

However, the special pertinence of the Weems case to that under consideration lies in the fact distinctly pointed out in a dissenting opinion by Mr. Justice White, the present Chief Justice, that the majority of the Court clearly treat the "accessories" provided for in the law and in the sentence as not separable from the main punishment, while Mr. Justice White and Mr. Justice Holmes held that upon the assumption that the law and the sentence thereunder were in part illegal, the illegal was "capable of separation from the legal in the law as well as in the sentence" and that the illegal might be disregarded and the constitutionality of the remaining part upheld. There the so called "accessories" were much more closely united with the main punishment than in this case is the provision for the prosecution of the bond with the provision for a fine, and upon an examination of the provisions of law applicable to the bond we think they are of such a character that it is not necessary to consider the constitutional question raised so far as it is based upon the theory that the fine and forfeiture constitute one indivisible penalty.

The bond required to be given by wholesale licensees is in form, so far as applicable, the same as the bond required of retail licensees. P. S. 5131. A statutory form for this bond is given in the Public Statutes, §5117, and this bond does not render obligors liable merely upon a conviction of the principal of an offence under the law regulating the traffic in intoxicating liquors, but the provision is that the obligors shall become liable to the penalty of the bond if the principal "shall wilfully violate any of the conditions or prohibitions" of the license. This bond is not forfeited by a mere violation of some provision of the law to which the licensee is amenable, nor necessarily by a conviction of some such violation, for we take it that the statute means what it says and that the word "wilfully" is to be given some force, and that a licensee may become liable to a fine for some act or omission and yet his conduct fall short of being wilful.

The word "wilful" though given different definitions under different circumstances cannot well mean less than intentionally and by design. *Town of Fletcher* v. *Kezer,* 73 Vt. 70, 50 Atl.

558; *Newel* v. *Whitingham,* 58 Vt. 341, 2 Atl. 172; *Savage* v. *Tullar,* Brayton, 223; *Buchanan* v. *Cook,* 70 Vt. 168, 40 Atl. 102.

In the case last cited, which is a tax case, reference is made to the learning in respect to the words "wilful" and "wilfully" as used in statutes and to the darker shade of meaning which they commonly have in penal statutes. So the Supreme Court of the United States has held that where a statute imposes a penalty upon one who shall wilfully violate a provision of law, the word "wilful" is to be given meaning and force, that it implies "a purpose to do wrong", "a determination with a bad intent" to do, or to omit the doing of something, the doing of something with an "evil design" or with a "bad purpose". *Spurr* v. *United States,* 174 U. S. 728, 19 Sup. Ct. 812, 43 L. Ed. 1150; *Potter* v. *United States,* 155 U. S. 438, 446, 15 Sup. Ct. 144, 39 L. Ed. 214; *Evans* v. *United States,* 153 U. S. 584, 594, 14 Sup. Ct. 934, 38 L. Ed. 830; *Felton* v. *United States,* 96 U. S. 699, 702, 24 L. Ed. 875.

The cases above cited fairly indicate the usual import of the words "wilful" and "wilfully" when used with reference to violations of the criminal law.

The offence of which the respondent was convicted was a violation of one of those police regulations of which one may be held guilty without reference to his "wilfulness" in the natural sense of the word. *State* v. *Gilmore,* 80 Vt. 514, 68 Atl. 658, 16 L. R. A. (N. S.) 786; *State* v. *Tomassi,* 67 Vt. 312, 31 Atl. 780; *State* v. *Perkins,* 42 Vt. 399.

Therefore, since the bond provided by statute can be forfeited only in consequence of a wilful violation of some provision of the law to which licensees are amenable, the forfeiture of the bond cannot be said to follow automatically upon a conviction for such an offence. Here the offence of which the respondent was convicted was not that of selling adulterated liquor, or of selling to any one to whom it was forbidden to sell, but of selling to a retailer certain cordials of which it had not submitted pint samples to the secretary of state for examination. It may well be that this failure grew out of a misunderstanding on the part of the respondent of its duty in respect to these cordials, put up and sold as it is not unlikely that they were,

and that so, or for some other reason, its violation of the regulation referred to was not wilful. That question is not now before us.

We intimate nothing as to the conclusion which we should reach if the forfeiture of the bond followed automatically upon a conviction nor as to what views we might entertain of the constitutional question in an action upon the bond nor as to whether in such action the State, if it prevails, is entitled as of right to the full penalty of the bond.

The other constitutional questions will be briefly disposed of. While the eighth amendment to the Federal Constitution does not operate upon the states, the Supreme Court of the United States now seems to recognize the doctrine that fines may be so grossly excessive as to amount to a deprivation of property without due process of law in violation of the fourteenth amendment. *Waters Pierce Oil Co.* v. *Texas*, 212 U. S. 86, 111, 29 Sup. Ct. 220, 53 L. Ed. 417.

But what we have already said meets any contention that is made, or that might be made, in this regard.

The remaining constitutional question raised, but not discussed, is that the respondent has been denied the equal protection of the laws. But this claim is without foundation.

*Judgment that there is no error in the proceedings and that the respondent takes nothing by its exceptions. Let execution be done.*