IN RE FRED H. BLAKE.

November Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed November 10, 1934.

*C. O. Grani* for the petitioner.

*Shields & Conant* for the petitionee.

THOMPSON, J. This is an original petition for a writ of *habeas corpus*. The petitioner, Fred H. Blake, alleges that he is, without law or right, confined and held in the Caledonia county jail by Frederick Flint, sheriff within and for the county of Caledonia, keeper of said jail, by order of Alfred L. Sherman, Superior Judge, then presiding at the November Term, 1932, of Caldonia county court. (There is no November Term of Caledonia county court. It appears from the record before us that the term referred to was the December Term, 1932.)

The petitionee has produced the petitioner in this Court. He has made his return, as provided by P. L. 2037, in which he admits that he is the sheriff of Caledonia county and the keeper of the common jail in St. Johnsbury within and for the county of Caledonia, and that he has the petitioner in his custody as said sheriff and as keeper of such common jail, and he sets forth at large the authority and the whole cause of such imprisonment, with a copy of the warrant upon which the petitioner is detained. The following facts appear from his return.

At the December Term, 1932, of Caledonia county court, in an action of tort, entitled, *Harry W. Putnam* v. *Fred H. Blake*, the plaintiff obtained a judgment against the petitioner for damages and costs in the amount of $2,231.68. At the time of rendering the judgment, the court, from a consideration of the facts, adjudged that the cause of action on which the judgment was founded arose from the wilful act of the defendant and that he ought to be continued in close jail.

A body execution with a close jail certificate indorsed thereon was issued and delivered to the petitionee for service. On January 7, 1933, the petitionee, being unable to find any goods

or chattels of the petitioner whereupon to levy the execution, for want thereof took his body and committed him in close jail in Caledonia county jail.

On March 11, 1933, the petitioner made written application to Judge Sherman, praying that the close jail certificate indorsed upon the execution might be vacated, and that he might be permitted to take the poor debtor's oath in conformity with the statutes of Vermont. There was a hearing on this application, and, on May 25, 1933, Judge Sherman adjudged and ordered that the close jail certificate "indorsed on said execution be vacated on the 7th day of June, 1933, and that the said Fred H. Blake be then permitted to take the poor debtor's oath and be entitled to the privileges thereof, or the liberties of the jail yard, as if the execution on which he was committed had issued without any certificate thereon."

On May 29, 1933, the petitioner applied to one of the commissioners of jail delivery within and for the county of Caledonia for permission to take the poor debtor's oath, and, notice of the application having been given to the creditor as provided by law, the jail commissioners held a hearing on the application on June 7, 1933, at which the petitioner and the creditor, Harry W. Putnam, were represented by counsel. The jail commissioners, upon examination of the petitioner under oath, and consideration of his testimony and other evidence produced before them, found and adjudged that the petitioner was not entitled to take the poor debtor's oath.

On June 20, 1933, the petitioner was admitted to the liberties of the jail yard, he having given a bond to the petitionee, as keeper of the common jail of Caledonia County, with David E. Porter, Harry W. Witters, and Jutten A. Longmoore as sureties, in the sum of $3,000, conditioned that he would not escape from such jail yard.

The petitionee, as keeper of such jail, pursuant to the provisions of P. L. 2199, gave a bailpiece to the sureties in the bond. On September 17, 1934, such sureties, previous to a breach of the bond, applied to G. C. Frye, a justice of the peace of Caledonia County, for a warrant to recommit the petitioner; and such magistrate, having received the bailpiece from the sureties, issued such warrant, in accordance with the provisions of P. L. 2200. On September 18, 1934, the petitionee as sheriff of Caledonia County, by virtue of such warrant, apprehended the body

of the petitioner and recommitted him to Caledonia county jail, where he has since been confined.

The grounds upon which the petitioner claims that he is illegally confined in Caledonia county jail are, in substance, as follows:

(1) That he has been held and confined in such jail for a period of time extending from January 6, 1933, to June 7, 1933, and that any further punishment would be cruel and unusual and contrary to the Eighth Amendment to the federal Constitution and to the Constitution of this State.

(2) That he has no property with which to satisfy the judgment against him, and he should be discharged by being admitted to the poor debtor's oath, and that to keep him confined in jail for any further period of time would be contrary to the Constitution of this State.

(3) That the order vacating "the close jail execution" as of June 7, 1933, compels the jail commissioners to discharge him either by taking the poor debtor's oath or by admitting him to the liberty of the jail yard, without bail, as if the execution on which he was committed had issued without any certificate indorsed thereon.

As to the first ground, it is sufficient to say that the Eighth Amendment to the federal Constitution does not operate upon the states. *State* v. *Hodgson*, 66 Vt. 134, 156, 28 Atl. 1089; *Barron* v. *Baltimore*, 7 Pet. 243, 8 L. ed. 672; *Pervear* v. *Massachusetts*, 5 Wall. 475, 18 L. ed. 608; *O'Neil* v. *Vermont*, 144 U. S. 323, 36 L. ed. 450, 12 Sup. Ct. 693; *State* v. *Burlington Drug Co.*, 84 Vt. 243, 254, 78 Atl. 882; *State* v. *O'Brien*, 106 Vt. 97, 107, 170 Atl. 98.

The first sentence of section 32, Ch. II, of the Constitution of this State reads as follows: "The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after his delivering up and assigning over, *bona fide*, all his estate, real and personal, in possession, reversion or remainder, for the use of his creditors, in such manner, as shall be regulated by law." P. L. 2218, 2219, regulate the manner in which such debtor may obtain his discharge from prison by delivering up all of his estate for the use of his creditors. The petitioner says in his brief that he has complied with the requirements of the Constitution and the statutes, and that any further confinement of him is contrary to the Constitution

and laws of this State. It is apparent from the language of the Constitution and the statutes referred to that their provisions apply to an imprisoned debtor who has property which he desires to deliver up to the use of his creditors, and not to a case like this where the debtor contends that he has no property of any kind to deliver up for the use of his creditors.

P. L. 2226 provides that, when a close jail certificate indorsed on a body execution is vacated, the court or judge shall determine "when such prisoner shall be entitled to the privileges of the poor debtor's oath or the liberties of the jail yard, as if the execution on which he was committed had issued without any certificate thereon."

This provision of the statute means that, when a close jail certificate is vacated, the execution on which the prisoner is confined in jail is reduced to any ordinary body execution, and he is held in jail under the execution as though the certificate had not been indorsed thereon. Hereafter, when we refer to the execution or the original execution, we mean an ordinary body execution on which a close jail certificate has not been indorsed.

The petitioner alleges: "That the close jail execution was vacated as of June 7, 1933, and is not now of any force or effect to keep and hold said Blake within said county jail." This allegation is not correct either in fact or in law. It appears from what we have said that the execution was not vacated; it was the close jail certificate that was vacated, and, when it was vacated the petitioner was then held in jail on the execution.

The petitioner alleges further: "That the order vacating the close jail execution as of June 7th, 1933, compels said jail commissioners to discharge the said Blake either by taking the poor debtor's oath or the liberty of the jail yard, without bail, as if the execution on which he was committed had issued without any certificate thereon." Here, again, the petitioner erroneously alleges that the close jail execution was vacated, but we consider the question raised by this allegation as though it read "that the order vacating the close jail certificate," etc.

The petitioner, referring to the order of Judge Sherman that the close jail certificate be vacated on June 7, 1933, and that the petitioner "be then permitted to take the poor debtor's oath and be entitled to the privileges thereof, or the liberties of the jail yard, as if the execution on which he was committed had issued without any certificate thereon," says in his brief: "Under the

order of the court, the contrary not being shown, the jail commissioners have but one course to pursue and that is to give relator the poor debtor's oath. * * * Judge Sherman, in the exercise of his discretion, ordered that the relator be given the poor debtor's oath or the liberty of the jail yard. * * * Your relator stands ready to be examined at any time in regard to his real or personal property and give this Court any information necessary relating to this cause so that justice may be done. Your relator therefore prays that the writ of *habeas corpus* be granted and that the relator be discharged on taking the poor debtor's oath. That the jail commissioners be ordered to give to said relator said oath and that he be discharged from confinement in Caledonia county jail.''

It is evident from the allegations in the petition and what is said in his brief, that the petitioner does not comprehend the limitations of the powers of a superior judge when vacating a close jail certificate, and of the powers of this Court in a *habeas corpus* proceeding.

The law giving a county court the power to vacate a close jail certificate indorsed on an execution issued on a judgment recovered in an action founded on a tort was passed in 1830. The language of that act (Revised Statutes, 1839, Ch. 103, § 35) is substantially the same as that of P. L. 2226, in that it provides that the court ''shall, in consideration of the aggravation of the prisoner's case, and the extent of his confinement, determine when such prisoner shall be entitled to the privileges of the poor debtor's oath, * * * in the same manner as if the execution, on which he is committed, had issued on a judgment recovered on contract.''

In *Sommers* v. *Johnson*, 4 Vt. 278, 24 A. D. 604, this Court, when holding that the act of 1830 extended its relief to persons then in prison, said:

''The statute provides, that, in such cases, the county court, on petition to them, as was made in this case, may inquire into all the circumstances of the case, and grant the power to petition the jail commissioners for liberation on taking the poor debtor's oath. It becomes the duty of the court to decide, under the statute, whether the imprisonment has become punishment, and whether the prisoner has been sufficiently punished, and whether it is safe, and best for society, that he should be liberated, in case he can show his poverty before the jail commissioners.''

It appears from this construction of the act of 1830, that, under its provisions, the county court, on vacating a close jail certificate, had jurisdiction only to grant the power to the prisoner to petition the jail commissioners for liberation on taking the poor debtor's oath, and that the burden was upon the prisoner to satisfy the jail commissioners that he was entitled to take such oath.

Sections 2225 and 2226 of the Public Laws are a revision of the act of 1830. While subsequent legislation has given a superior judge the same power to vacate a close jail certificate as that given to the county court by the act of 1830, and, also the right to the prisoner to be admitted to the liberties of the jail yard, the substantial provisions of the act of 1830 have not been changed by revisions of the statutes; and P. L. 2226 should receive the same construction as that given to the act of 1830 by this Court.

The rule is that changes made in the revision of statutes will not be taken to alter the law as previously enacted or construed, unless an intention to so do is clearly manifest. *Clark v. Powell*, 62 Vt. 442, 444, 20 Atl. 597; *Whitcomb v. Davenport's Estate*, 63 Vt. 656, 658, 22 Atl. 723; *Town of Brighton v. Kelsey*, 77 Vt. 258, 261, 59 Atl. 833; *Stearns v. Graham*, 83 Vt. 111, 114, 74 Atl. 486; *Cuthbertson v. Ritchie*, 99 Vt. 50, 54, 130 Atl. 756.

It necessarily follows that, under the provisions of P. L. 2226, Judge Sherman lacked the jurisdiction to order the jail commissioners to admit the petitioner to the poor debtor's oath. We construe that part of his order of May 25, 1933, wherein it is said "and that the said Fred H. Blake be then permitted to take the poor debtor's oath and be entitled to the privileges thereof," as meaning no more than that the petitioner might "then" apply to the jail commissioners to be admitted to the poor debtor's oath. The order is susceptible of that construction, and we will not presume that Judge Sherman exceeded his jurisdiction. That is the construction the petitioner put upon the order as, when the close jail certificate was vacated, he "then" applied to the jail commissioners to be admitted to the oath.

Nor has this Court the power to compel the jail commissioners to administer the oath to the petitioner. The proceedings for discharging poor debtors from imprisonment are regulated entirely by the statutes. The only thing that we can examine

and determine in this proceeding is whether, on the record before us, the petitioner is unlawfully confined in jail. P. L. 2024, 2025.

It appears from the statutes, P. L. 2208-2217, inclusive, that the jail commissioners constitute the only tribunal that has jurisdiction to admit a poor person imprisoned on an execution issued on a judgment in a civil cause to the poor debtor's oath. That the commissioners have a judicial function to perform appears clearly from the statutes.

When there is a hearing before the jail commissioners on a petition by an imprisoned debtor to be admitted to the poor debtor's oath, if the creditor, his agent or attorney appears at the hearing, as was done in this case, the commissioners shall examine the prisoner under oath and hear such evidence as the creditor produces, relative to the circumstances, situation, and property of the prisoner. P. L. 2214. If, in their opinion, he ought not to be admitted to the oath, he must remain in prison if he is not admitted to the liberties of the jail yard, and they shall tax costs for the creditor. P. L. 2215. If the prisoner satisfies the commissioners that he has not estate to the amount of twenty dollars, nor sufficient to satisfy the execution on which he is committed, exclusive of property exempt from execution, and that he has not disposed of any part of his estate to defraud his creditors, nor disposed of the same after his commitment to defraud the committing creditor, or to prefer other creditors to him, they shall find those facts and admit the prisoner to the poor debtor's oath, and deliver to him two certificates thereof (P. L. 2216), in the form prescribed by P. L. 2222. The prisoner, on delivering one of such certificates to the keeper of the jail and paying him his charges for board and fees, shall be discharged from imprisonment on the execution described in such certificate. P. L. 2217.

The commissioners are not constituted a tribunal of record, and they are not required to keep any record of their proceedings. *Raymond* v. *Southerland,* 3 Vt. 494, 504. There is no appeal from their decision, and there is no provision for a review of their proceedings by this Court or by the county court.

If the prisoner is lawfully confined in jail, the certificate of the jail commissioners delivered to the keeper of the jail is the only process that justifies him in releasing the prisoner from jail. *Haight* v. *Richards,* 3 Vt. 77, 81; *Holbrook* v. *Pearce,*

15 Vt. 616. This Court has not the power, in this proceeding to order the jail commissioners to issue such certificates.

 The statute gives the jail commissioners jurisdiction to determine upon the evidence produced before them whether an applicant ought or ought not to be admitted to the poor debtor's oath. We cannot on the writ of *habeas corpus* re-examine their proceedings *de novo*. The Legislature has given this Court no such authority. *In re Hosley*, 22 Vt. 363; *In re Powers*, 25 Vt. 261, 271; *In re Dawley et al.*, 99 Vt. 306, 314, 131 Atl. 847.

However, if it should appear clearly in a case that the commissioners of jail delivery had abused their authority in refusing to permit an applicant to take the poor debtor's oath, some adequate remedy may be found to exist, but, since this question is not before us, we are not called upon to express an opinion.

It appears that the proceedings under which the petitioner is now confined in jail are in accordance with the provisions of the statute and regular in form, and that his confinement in jail is not illegal.

Under the provisions of P. L. 2201, 2202, the prisoner is entitled to the liberties of the jail yard as provided by P. L. 2192.

*It is adjudged that the petitioner is not illegally deprived of his liberty, and he is remanded to the Caledonia county jail whence he was taken, and his petition is dismissed.*