STATE *v.* JOHN F. DWYER.

May Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed October 6, 1936.

*Lawrence, Stafford & O'Brien* for the respondent.

*Asa S. Bloomer,* State's attorney, for the State.

SLACK, J. P. L. 4260 provides: "When a person having the control of a legal pupil notifies the superintendent that he is unable to provide such pupil with suitable clothing for school attendance, and if, upon investigation the superintendent is satisfied that such pupil does not have suitable clothing and that such person is unable to provide such clothing, the superintendent shall notify the overseer of the poor of the town in which such person resides, who shall at once provide suitable clothing for such pupil; and the town so furnishing the same may recover the expense thereof from the town chargeable with such child's support as is provided in chapter 160."

P. L. 4266 provides: "A superintendent, truant officer or an overseer of the poor who refuses or neglects to carry out the provisions of this chapter (of which P. L. 4260 is part), shall be fined not more than one hundred dollars."

P. L. 8714 provides: "A state, county, town, village, fire district or school district officer who wilfully neglects to perform the duties imposed upon him by law, either express or implied, shall be imprisoned not more than one year or fined not more than one thousand dollars, or both."

The respondent, who is one of the selectmen of the town of Rutland, and as such acting as overseer of the poor of that town, stands convicted of wilfully neglecting to perform the duties imposed upon him by law in failing to provide suitable clothing for certain pupils of that town, namely, Stella and Mary Bujak and Leo, Frank, and Henry Kantorski, on December 23, 1935, after being notified by the superintendent of schools that such pupils were in need of such clothing for school attendance and that such clothing should be provided for them.

■■ By proceeding under P. L. 8714 instead of P. L. 4266, as it did, the State had the burden of proving that the respondent's conduct in failing to provide suitable clothing for these pupils was *wilful*. This broadened the scope of the inquiry, and opened the door for the admission of evidence that would otherwise have been immaterial. The State could not establish the offense charged by simply showing that respondent acted intentionally and by design, but was required to go further and show that he was actuated by a wrongful purpose, a bad purpose, or a design to injure another, or that he acted wantonly and lawlessly. *State* v. *Burlington Drug Co.*, 84 Vt. 243, 252, 78 Atl. 882; *State* v. *Palmer,* 94 Vt. 278, 110 Atl. 436, and cases cited. That the word "wilful" used in P. L. 8714 and its derivatives must, in the instant case, receive the "darker shade of meaning" which is commonly given them when used in penal statutes, is clear when that section is construed with P. L. 4266. Under the latter an overseer who refuses (which indicates intent and design) to furnish suitable clothing is liable to a moderate fine, while under the former an offender is subject to a heavy fine, imprisonment, or both.

■ The State showed that some of the employees of the Vermont Marble Company, including Bujak and Kantorski, were out on a strike at the time the alleged offense was committed, and had been for some time, and that respondent was an employee of the same company, presumably not on a strike. It appeared that respondent at first took the position that he was not required to furnish financial assistance to strikers. The latter part of October or early in November, 1935, he wrote one Guile, who we assume from the letter was a striker who had applied for assistance, as follows: "The town cannot help anyone on strike and I do not see how I can help." The State offered this letter in evidence as tending to show respondent's attitude toward the strikers and that he acted wilfully, and it was admitted subject to his exception that it was immaterial, incompetent, and irrelevant, and not addressed to any one connected with this case.

Since it was an expression of respondent's attitude toward furnishing aid to strikers in general, it mattered not to whom it was addressed, and we think that as the evidence then stood it was for the jury to say whether it tended to show wilfulness on his part in failing to act or a business policy which he believed the circumstances justified.

■ To meet the charge of wilfulness and to repel any unfavorable inference to be drawn from the Guile letter, the respondent offered to show that he was aiding fifteen families, the heads of which were strikers, including one for whom the superintendent asked assistance when he did for the families in question. This was excluded subject to respondent's exception. This was error. Having allowed the State to introduce evidence which it is argued tended to show that the respondent was actuated by wilfulness in declining to aid strikers, because they were strikers, it is not apparent upon what theory this evidence was excluded.

At the close of the State's evidence the respondent moved for a directed verdict on the ground, among others, that the evidence failed to show that he was guilty of any wilful act or omission in failing to perform the duties of overseer of the poor. The motion was denied and respondent excepted.

■ ■ He waived this exception by thereafter introducing evidence in his own behalf. The motion was renewed at the close of all the evidence, and was again denied subject to re-

308

spondent's exception. In considering this exception the evidence must be viewed in the light most favorable to the State.

■■ In its brief the State calls attention to the testimony of the superintendent that respondent told him, in effect, that he had taken counsel and was not to help the Bujak and Kantorski families, and that he was not going to; that he had consulted a lawyer about the situation; that he had looked up these matters some and had taken counsel and that they believed they knew what they were doing; that the superintendent thought respondent felt that he knew what he was doing, and that it was understood that the superintendent was to notify the State's attorney, as tending to show that respondent acted wilfully. That this evidence tended to show that respondent acted intentionally and by design must be admitted, but, as has been pointed out, that does not constitute wilfulness under this statute. Instead of showing that respondent acted from a bad purpose, or wantonly and lawlessly, this evidence tended to show the opposite—that he was trying to find out what the law required of him. Furthermore, in the same talk the superintendent told respondent, in substance, that there were some financial matters pertaining to these families that he did not feel that he was able to investigate; that they were "beyond my privilege to go," and that he did not have the power to investigate their financial status, and testified that he "could not determine whether they had the means to provide what they claimed to me." The respondent told the superintendent what he knew about their financial status and it was understood that the latter was to see, or notify, the State's attorney, Mr. Bloomer, and the uncontradicted testimony of the respondent was that he told the superintendent, "I think that would be a good thing because Mr. Bloomer would probably tell me what to do because he has been telling us what to do in other cases right along." It is clear that in that conversation there was nothing tending to indicate that the respondent acted wilfully, having in mind the meaning that word must receive in the statute under consideration. And the only evidence in the case that justified even an inference that he so acted was the Guile letter. It appeared that when that was written respondent had not taken counsel in the matter. Later he met Guile and the State's attorney at the latter's office and the State's attorney then told him that "it did not make any difference whether they were strikers or not, he would have to help

them," referring, we understand, to the Guile family. Thereupon he did help them. And there was no evidence that he thereafter made any distinction between strikers and non-strikers, or that his failure to furnish clothing for the Bujak and Kantorski children was because their fathers were strikers. In the circumstances, the jury could not reasonably and properly find respondent guilty of wilful misconduct in his treatment of the Bujak and Kantorski families from what appeared in the Guile letter, *Wellman, Admr.* v. *Wales*, 98 Vt. 437, 447, 129 Atl. 317, and the motion should have been granted.

██ ██ The State says that this is a test case. Even so, it is none the less imperative that it be disposed of on the law applicable to its merits. The State says, too, that "The rights of the poor people of the County have been upheld by a Rutland County Jury," and urges that the verdict "be upheld, the courageous act of the Superintendent of Schools sustained," etc. We are not concerned with these matters, since they are not germane to the questions presented for review. What those questions are, and the reasons for our conclusions respecting them must be apparent from what has been said. Other exceptions saved need not be considered.

*Judgment and sentence reversed, respondent adjudged not guilty and discharged.*