## FELTON *v.* UNITED STATES.

1. Doing or omitting to do a thing "knowingly and wilfully" implies not only a knowledge of the thing, but a determination with an evil intent to do it or to omit doing it.

2. A distiller of spirits is presumed to be acquainted with the utensils and machinery used in his business, and with their character and capacities. But the law does not attach culpability and impose punishment where there is no intention to evade its provisions, and the usual means to comply with them are adopted.

3. All that the law requires of him, to avoid its penalties, is to use in good faith the ordinary means — by the employment of skilled artisans and competent inspectors — to secure utensils and machinery which will accomplish the end desired. If, then, defects exist, and the end sought be not attained, or defects in the utensils or machinery not then open to observation be subsequently discovered, he is not chargeable with "knowingly and wilfully" omitting to do what is required of him.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

The sixteenth section of the act of July 20, 1868, imposing taxes on distilled spirits (15 Stat. 131), provides, among other things, that the owner, agent, or superintendent of any distillery shall erect in a room or building, to be provided and used solely for that purpose, two or more receiving cisterns; each to be at least of sufficient capacity to hold all the spirits distilled during twenty-four hours, into which shall be conveyed all the spirits produced in the distillery; and that each cistern shall be connected with the outlet of the worm or condenser by suitable pipes or other apparatus, so as to prevent the abstraction of spirits while passing from the outlet of the worm or condenser back to the still or doubler. The ninety-sixth section provides (id. 164) that if any distiller shall "knowingly and wilfully" omit, neglect, or refuse to do or cause to be done any thing required by law in conducting his business, or shall do any thing by that act prohibited, if there be no specific penalty or punishment imposed by any other section, he shall pay a penalty of $1,000; and all distilled spirits or liquors owned by him, or in which he has any interest as owner, shall be forfeited to the United States.

This action was brought, by the United States, against

Felton & Stone, distillers of spirits, to recover the penalty of $1,000 prescribed by this act, upon the alleged ground that they " knowingly and wilfully " omitted, neglected, and refused to construct and maintain pipes and other apparatus connecting the receiving cisterns in their distillery with the outlet of the worm and condenser, in such manner as to prevent the abstraction of spirits while passing from the outlet back to the still and doubler, contrary to the form of the statute in such case provided. The defendants pleaded not guilty in "manner and form as alleged," and denied every allegation of the declaration.

On the trial it appeared that, the still of the defendants having become worn and defective, a new one was made and placed in their distillery, which proved to be too large for the capacity of the low-wine receiver; and that on the 18th of June, 1872, the low wines in it began to overflow; that the defendants and their servants were ignorant of this want of capacity of the receiver until it was too late to remedy it for the distillation then taking place, and that there was no course left for them but to let the wines overflow and run to waste, or to catch them, and secure their benefit to the government and themselves by dumping them into the vats for redistillation. The receiver was a part of the apparatus by which the low wines were carried from the try-box back to the doubler.

The superintendent of the distillery, on the morning of the 18th of June, 1872, apprehensive of the overflow, called upon the assessor of the district, and asked permission to draw off from the receiver a portion of the low wines, and dump them into vats for redistillation; and, failing to obtain such permission from him, induced him to telegraph to the commissioner of internal revenue to grant it for a few days, until a new cistern could be built. The answer of the commissioner was a refusal to grant the permission, and a direction that the defendants must build new cisterns. After this dispatch was sent, and before the answer was received, the superintendent arrived at the distillery; and, finding that the wines had overflowed the receiver, he permitted a portion of the contents to be drawn off. This was effected by withdrawing a plug from a pipe in the side of the receiver, about nine inches

from its top. About four hundred gallons of low wines were thus drawn off, and dumped into a vat, from which material for distillation was at the time being pumped for redistillation. The record states that this was done in good faith, for the purpose of saving the property for the defendants and the government. The evidence showed that the wines were worthless, or next to worthless,.except for redistillation, and were not marketable. Among other instructions to the jury, the court was requested to give the following: " That if the inadequacy of the low-wine cistern was unknown to the defendants and their superintendent until too late to prevent the overflow, and that then the superintendent, in the exercise of his best judgment, acting in good faith, drew off the wines and dumped the same into the vats for redistillation, the defendants were not liable."

The court refused to give this instruction; but charged the jury that the defendants must be held accountable for the acts of their superintendent in the management of the distillery, and, if they found that he had violated the law by designedly opening the low-wine receiver, and withdrawing the plug from the pipe, so that the spirits could be and were abstracted while passing from the outlet of the worm back to the still or doubler, they were authorized to find against the defendants. The jury found a verdict for the plaintiffs, and assessed their damages at the sum of $1,000; but they accompanied their verdict with a finding that there was only a technical violation of the law, and that there was clearly no intention to defraud the government thereby. Judgment having been entered upon the verdict, the case was brought here on writ of error.

*Mr. Benjamin Dean* for the plaintiffs in error.
*Mr. Assistant-Attorney-General Smith*, contra.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The act of Congress, in requiring the apparatus connecting the receiving cisterns in a distillery with the outlet of the worm and condenser to be constructed in such a manner as to prevent the abstraction of spirits while passing from the outlet and condenser back to the still and doubler, was designed to guard against frauds upon the revenue, the perpetration of

which would be facilitated by any other construction. It did not intend to prohibit such abstraction when necessary, from unforeseen contingencies, to prevent the waste or destruction of the liquor. Accidents in the distillery — such as the breaking of the bands of the cisterns, and leakage from unknown defects, the danger of an approaching fire, and many other causes — may not only render it necessary, but a duty, on the part of the distiller, to draw off the liquor in the speediest way. The spirit and purpose of the act are not to be lost sight of in a strict adherence to its letter. The offence, therefore, of the defendants consisted, not in their taking measures to save the low wines which were overflowing the receiver and running to waste, by drawing off a portion of the contents of the receiver and dumping it into the vats for redistillation, but in their omission to have a receiver of sufficient capacity to hold the low wines which were distilled on the eighteenth day of June, 1872. If they were culpable for the abstraction of the wines, it was because of such omission; and on this point the evidence failed in an essential particular. So far from showing or tending to show that, when the new still was made and placed in the distillery, the defendants, or any of their servants, had any knowledge of the incapacity of the receiver to hold all the wines that might be distilled on any day, it showed their ignorance of the defect until it was too late to remedy it for the distillation then taking place. There was, therefore, the absence of that knowledge which could render the neglect wilful, and therefore actionable. They must have "knowingly and wilfully" omitted to furnish a receiver of sufficient capacity, before the severe penalty prescribed could be imposed upon them and their distilled spirits subjected to forfeiture. Doing or omitting to do a thing knowingly and wilfully, implies not only a knowledge of the thing, but a determination with a bad intent to do it or to omit doing it. "The word 'wilfully,'" says Chief Justice Shaw, "in the ordinary sense in which it is used in statutes, means not merely 'voluntarily,' but with a bad purpose." 20 Pick. (Mass.) 220. "It is frequently understood," says Bishop, "as signifying an evil intent without justifiable excuse." Crim. Law, vol. i. sect. 428.

If the record were silent as to the want of knowledge of the

superintendent, it would be presumed from his connection with the distillery that he knew the still was too large for the capacity of the receiver; and from his knowledge similar knowledge would be imputed to his principals. Parties are presumed to be acquainted with the utensils and machinery used in their business, and of course with their character and capacities. But the law at the same time is not so unreasonable as to attach culpability, and consequently to impose punishment, where there is no intention to evade its provisions, and the usual means to comply with them are adopted. All punitive legislation contemplates some relation between guilt and punishment. To inflict the latter where the former does not exist would shock the sense of justice of every one.

While, therefore, the presumption against the parties of knowledge of defects in the utensils and machinery of their distilleries is great, and not easily rebutted, it is not conclusive: it can be overcome. Distillers are not supposed to be experienced machinists, familiar with the construction of their different works, and with every thing required to render them perfect in all their parts. In many particulars they must necessarily rely to a great extent upon others. All that the law does require or can require of them, to avoid its penalties, is to use in good faith the ordinary means—by the employment of skilled artisans and competent inspectors—to secure utensils and machinery which will accomplish the end desired. If defects should then exist, and the end sought be not attained, or defects not then open to observation should subsequently be discovered, the parties cannot be charged with "knowingly and wilfully" omitting to do what is required of them. We think, therefore, that the instruction requested should have been given. The object of the law in all its stringent provisions is to prevent fraud upon the revenue and to secure the tax levied. Here no fraud was intended by the defendants. It is so found by the jury; and, moreover, none could have been committed by them in what they did. The low wines drawn off passed into the vat, with other matter, for distillation. They were in that condition worthless, or nearly so, except for redistillation: they were not marketable spirits. The record so states, and adds that the parties in drawing off the wines,

which were running over and going to waste, acted in good faith for the purpose of saving the property for themselves and the government; that is, as we understand it, of saving the property, and securing the tax to the government. If a purpose to evade the laws be an element in the offence charged, the defendants could not, under the evidence presented by the record, be rightfully subjected to the penalty prescribed and the forfeiture of their property.

The judgment will be reversed, and case remanded for a new trial; and it is

*So ordered.*