STATE EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, v. MARVIN L. HOLSCHER, RESPONDENT.
230 N. W. 2d 75

Filed May 15, 1975. No. 39054.

M. J. Bruckner, for relator.

John E. North of McGrath, North, Dwyer, O'Leary & Martin, for respondent.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This is an original disciplinary proceeding brought in the name of the State of Nebraska on relation of the Nebraska State Bar Association against Marvin L. Holscher, a lawyer duly admitted and licensed to practice his profession in this state.

Respondent was charged with the violation of Rules DR 7-102(A) (3) and (5), and DR 8-101(A) (2) of the Code of Professional Responsibility. The referee appointed herein has filed a report recommending censure or reprimand. Relator has filed exceptions to that report. We disagree with some of the conclusions

of the referee, but accept his recommendations as to penalty.

Respondent was elected county attorney of Scotts Bluff County in the general election held in November 1970. At the time he took office there were in excess of 400 outstanding tax sale certificates left from previous administrations. He was also faced with the prosecution of a large number of criminal cases resulting from a drug investigation which had been going on in Scotts Bluff County for the previous 3 months. Because of a statutory requirement that felony cases must be tried within 6 months of the filing of the information, respondent devoted his time and attention to the criminal cases, paying little attention to the tax foreclosure problems, although the county commissioners were putting pressure on him to commence action on them. Respondent, at the time of his election, had never handled a tax foreclosure case and was unfamiliar with the necessary legal procedures.

The 1971 Legislature passed L.B. 743, which amended section 77-1918, R. R. S. 1943. It became effective May 22, 1971. Prior to this amendment, section 77-1918, R. R. S. 1943, provided that it was the duty of the county attorney to commence action to foreclose the lien of delinquent taxes when ordered by the county board, and to promptly foreclose any tax sale certificates issued by the county. No fee in addition to his regular salary was authorized. As amended, the section provided: "The county board shall have authority to direct the county attorney to commence foreclosure of such liens or certificates, or it may designate another attorney to commence such actions, and is authorized to pay any reasonable fee for such foreclosures, to be assessed as costs, but in the event the county attorney is designated to bring the action the fee shall be fifty dollars for each cause of action in addition to his salary, to be retained by him, but it shall not be paid to the

county attorney until the decree is entered and the property sold pursuant to such decree."

The referee specifically found that respondent was aware the Legislature had passed a bill changing existing law to permit county attorneys foreclosing tax sale certificates to be paid a $50 fee for each certificate, and had discussed the change with other county attorneys, but he did not know the bill was designated as L.B. 743, nor had he ever read or analyzed the bill after it was passed. He discussed fees for the foreclosure of tax sale certificates with the county commissioners, and in May of 1971, made an oral agreement with them providing for payment of a $50 attorney's fee and $30 for abstracting on each tax certificate. There was no discussion as to when payment would be due.

Respondent thereafter investigated the tax certificate situation and found that the 5-year statute of limitations on 36 certificates would expire on June 1, 1971. He asked for and received from the county commissioners permission to employ another attorney to work with him on these foreclosures. No additional fee was allowed for this attorney. Respondent made his own arrangement with him.

The 36 tax sale certificates on which the statute of limitations was about to become applicable were consolidated into 7 cases and filed June 1, 1971. On November 8, 1971, respondent filed a claim for $1,440 with the county for payment for his services on these certificates. Nothing had been done in processing the foreclosures by that date except the filing of the petitions. Twenty-three of the certificates in the first four cases were redeemed. From June 1, 1971, to March 1972, no further action was taken by respondent on tax foreclosures. In March 1972, he prepared and submitted to the commissioners a written resolution to replace the oral one authorizing him to proceed with tax foreclosures. This resolution was passed by the commis-

sioners on March 20, 1972. Thereafter several additional tax foreclosures were filed.

Claims for services were filed by respondent in all cases prior to publication, entry of a decree, and confirmation of sale. As to some of the certificates, the property was redeemed after the filing of the foreclosure and no sale resulted. In some instances respondent actually filed his claim for services after the petitions had been prepared in his office but before the date the petitions were actually filed in the District Court. In all the claims filed with the county board, respondent used the terminology "Foreclosure of tax sale certificates," and then certified the authenticity of the claim.

Shortly after October 16, 1972, respondent learned that objections were being made to his claim. On October 27, he discussed the matter with the Attorney General of Nebraska. The referee found that this was the first time respondent thoroughly examined the provisions of L.B. 743, and realized that he had erroneously filed claims for his services in foreclosing tax sale certificates. On October 31, 1972, respondent received a county warrant in payment of a $2,000 claim which he immediately marked "Returned for cancellation," and delivered it to the county clerk. The total amount of the balance of claims improperly filed and paid was $12,640. Respondent, by means of a bank loan, repaid this amount to the county. The three commissioners of Scotts Bluff County cosigned his note.

In November 1972, charges were filed against respondent with the Committee on Inquiry for the Seventeenth Judicial District. Hearing was held by the committee in January 1972. The record was thereafter referred to the Advisory Committee of the Nebraska State Bar Association. That committee concluded that probable cause existed for disciplinary action against respondent, and this proceeding was filed.

The provisions of the Code of Professional Respon-

sibility alleged to have been violated are as follows:

DR 7-102(A) (3): "Conceal or knowingly fail to disclose that which he is required by law to reveal."

DR 7-102(A) (5): "Knowingly make a false statement of law or fact."

DR 8-101(A) (2): "Use his public position to influence, or attempt to influence, a tribunal to act in favor of himself or of a client."

L.B. 743, § 3, specifically states it was attempting to provide adequate compensation for county attorneys and that it desired the act to be effective as soon as it could become operative under the Constitution of the State of Nebraska. The respondent was then the duly qualified and acting county attorney of Scotts Bluff County, having served 5 months into his term. Article III, section 19, Constitution of Nebraska provides, so far as material herein: "* * * nor shall the compensation of any public officer * * * be increased or diminished during his term of office." Ignoring the question of whether the respondent could have accepted payment for the foreclosures even after he completed them, by filing his claims he was in violation of the provisions of section 77-1918, R. R. S. 1943. The statute specifically provides the fee shall not be paid to the county attorney until the decree is entered and the property sold pursuant to such decree.

As the referee suggests, the payment of respondent's claim required the combined action of the county attorney in filing the claim, the board of commissioners in approving the same, and the county treasurer in issuing the warrant to pay it. It may be said that all parties concerned were concurrently negligent in the performance of their duties in this regard. Compounding the problem is the fact that the county attorney has the duty of advising all county officials as to the law. By his own admission he did not know the law and took no steps to ascertain what it was. Obviously, the county commissioners and the treasurer assumed that the

county attorney knew what he was doing. Removal from office is the penalty imposed upon the county attorney, the treasurer, and any member of a county board who shall willfully fail, neglect, or refuse to perform his duties under section 77-1918, R. R. S. 1943. Here it appears the negligence was shared by all.

Section 23-135, R. R. S. 1943, provides that claims against a county must be filed with the county clerk within 90 days after materials are furnished or labor is performed. Section 23-135.01, R. R. S. 1943, is a penal statute prescribing punishment for filing a false claim. So far as material herein, it provides: "Whoever shall file any claim against any county as provided in section 23-135, knowing said claim to contain any false statement or representation as to a material fact or whoever shall obtain or receive any money or any warrent for money from any county knowing that the claim therefor was based on a false statement or representation as to a material fact, if the amount claimed or money obtained or received, or if the face value of the warrant for money shall be one hundred dollars or more shall, upon conviction thereof, be imprisoned in the Nebraska Penal and Correctional Complex not more than five nor less than one year."

Criminal sanctions may be imposed only if the claimant knew the claim contained a false statement or false representation or he received money or a warrant for money knowing the claim for which he received it was based on a false statement or representation. In other words, there must have been a criminal intent to defraud the county by the use of false statements or representations. Mere negligence on the part of the claimant is not enough to sustain a conviction under section 23-135.01, R. R. S. 1943, no matter how gross it might have been. This, however, is not a criminal prosecution. Respondent filed his claim for services prematurely, in some instances even before a tax foreclosure was even filed. We cannot believe that re-

spondent would not know this was improper procedure. At the very least it would be conduct so carelessly and recklessly negligent that we would have to find respondent did it knowingly. Otherwise we might as well forget the Code of Professional Conduct. The referee found otherwise. We disagree and find the respondent in violation of DR 7-102(A) (5) in the certification to the claims filed.

Respondent seeks to excuse himself on the ground that he was ignorant of the provisions of section 77-1918, R. R. S. 1943, as amended. The amendment became effective on May 22, 1971, which was after he had taken office. As the referee suggests, respondent leans on a broken reed. He had served previously as a deputy county attorney and was an experienced lawyer in general practice prior to his election. He knew in advance of that election that the county commissioners were expecting the county attorney to foreclose all delinquent tax certificates, yet he made no effort to familiarize himself with the law governing that subject, with specific reference to fees, either before or after taking office.

Before he made his agreement with the county commissioners respondent knew that section 77-1918, R. R. S. 1943, had been amended by the Legislature and the law on foreclosure fees had been changed, yet he made no attempt to ascertain what the law was or how it had been changed by the amendment nor how it might affect him personally. He gave as a reason his preoccupation with the prosecution of a number of criminal cases on which the statute of limitations might run. This is very unpersuasive and his failure to check the statute is inexcusable.

We have repeatedly recognized the ancient maxim that ignorance of the law is no excuse. It is a maxim sanctioned by centuries of experience. See Satterfield v. State (1961), 172 Neb. 275, 109 N. W. 2d 415. It applies with even greater emphasis to an attorney at

law who is expected to be learned in the law. It should be particularly applicable to a county attorney who should make himself fully conversant with the duties of his office. Misconduct of an attorney acting in an official capacity has been held to constitute a ground for his suspension or disbarment. State ex rel. Nebraska State Bar Assn. v. Wiebusch (1951), 153 Neb. 583, 45 N. W. 2d 583. It is inexcusable for an attorney to attempt any legal procedure without ascertaining the law governing that procedure. Of all classes and professions the lawyer is most sacredly bound to understand and uphold the law. Respondent was guilty of extreme negligence in his failure to familiarize himself with section 77-1918, R. R. S. 1943, as amended. The fact that he was extremely busy with criminal prosecutions does not absolve him of this responsibility. It would have taken comparatively little time to have read the statute as amended.

It is equally hard for us to understand how any county attorney would believe that a county should pay for services before they were actually completed. We are equally unpersuaded by the contention that most of his work had been done by the time a petition was filed. Our own experience is otherwise. Unquestionably, respondent failed to discharge his duties in the proper manner.

Disciplinary Rule 7-102(A) (3) provides that a lawyer shall not intentionally conceal or knowingly fail to disclose that which he is required by law to reveal. The gravamen of DR 7-102(A) (3) therefore is the intentional concealment and failure to disclose. Giving the respondent the benefit of the doubt, the evidence in this case does not support a finding of an intentional concealment by respondent. On the record the allegations under DR 7-102(A) (3) are not proven and that charge should be dismissed.

Disciplinary Rule 8-101, providing, so far as material here: "(A) A lawyer who holds public office shall

not: * * * (2) Use his public position to influence, or attempt to influence, a tribunal to act in favor of himself or of a client," has not been proved herein. The charge must be construed to be that respondent used his position as county attorney to influence the board of county commissioners of Scotts Bluff County to approve his claim for services in foreclosing the delinquent tax certificates. We hold that a county board is a tribunal embraced within the ambit of DR 8-101. While it was the duty of the county attorney to advise the county board relative to the law involved, the question is, did he use his influence to get it to violate the law? There is no evidence that the respondent made any overt attempt to influence the county board to approve his claims for services or used his position as county attorney in any way to persuade or coerce the board to do so. The most that can be said is that the board assumed that respondent was acting properly and legally when he filed the claims. We agree with the referee, the evidence does not support the claim that the respondent used his position to influence the board, and dismiss the charge under DR 8-101.

We find the respondent guilty of a violation of DR 7-102(A) (5), but sustain the findings of the referee as to DR 7-102(A) (3) and DR 8-101(A) (2) of the Code of Professional Conduct. Respondent was not charged, as he should have been, with gross negligence and the lack of proper preparation. It would have been more appropriate herein to have included DR 6-101(A) (2), which reads as follows: "A lawyer shall not: * * * (2) Handle a legal matter without preparation adequate in the circumstances." It is more in line with respondent's irresponsible conduct. Respondent clearly would have been in violation of this provision of the Code. He admits that he did not know the law. He knew the statute had been amended and made no attempt to ascertain its provisions. It is inexcusable for an attorney to attempt a legal procedure without en-

deavoring to ascertain the law governing that procedure. DR 6-101(A) (3) proscribes that type of conduct.

In fairness to respondent, we must observe that his predecessors in the county attorney's office created his predicament at the time he took office. They ignored DR 6-101(A) (3) which covers neglecting a legal matter entrusted to them. As a part of the duties of the office, delinquent taxes were to be foreclosed at the request of the county commissioners.

To respondent's credit, we note that he conscientiously and promptly tried to rectify his mistake. Other than his conduct herein, he has been a sincere, honest, and aggressive public official. On the basis of respondent's violation of DR 7-102(A) (5) he is subject to discipline. On the record before us, we determine that censure is an appropriate penalty. We feel what we have said herein is a sufficient censure of respondent's failure to fully live up to his responsibility as a lawyer. We therefore censure respondent for his conduct, with the admonition that respondent thoroughly study the Code of Professional Responsibility.

Costs, including the fee of the referee, are taxed to the respondent.

JUDGMENT OF CENSURE ACCORDINGLY.

CLINTON, J., concurring in part and dissenting in part.

I concur with the portion of the opinion which finds the respondent not guilty of violations of DR 7-102(A) (3) and DR 8-101(A) (2). I dissent from that portion of the opinion which finds the respondent guilty of a violation of DR 7-102(A) (5). I further disagree with some of the wholly unnecessary dicta in the majority opinion.

I agree that the respondent was negligent in not determining the content of section 77-1918, R. R. S. 1943 (Reissue 1971), Laws 1971, L.B. 743, previous to filing the various claims for services rendered. Negligence, however, is not the charge made against him and of which the majority opinion of this court finds him guilty.

He is found guilty of *knowingly* making a *false* statement of *law* or *fact*. Such finding, in my judgment, is completely contrary to the clear weight of the evidence, contradicts the justifiable findings of fact by the referee, and, in my judgment, is unsupportable both on the basis of the evidence and the applicable law. Lawyers who are brought before this court are entitled to no better treatment than other litigants, civil or criminal, but they are clearly under rudimentary notions of due process entitled to be tried under the pertinent applicable rules and not subjected to unfair treatment under rules made for the occasion and which will probably never again be followed.

The majority opinion does not state all the pertinent facts and it therefore gives a distorted perspective of the transaction here involved. For a period of 17 years prior to the respondent's election as county attorney, no foreclosure of delinquent real estate taxes had taken place in Scotts Bluff County. The statute in force from 1961 until the enactment of L.B. 743, insofar as it is pertinent, was as follows: "It shall be the duty of the county attorney, as promptly under all the circumstances as it is reasonably possible so to do, to institute suit to foreclose the lien of the taxes *when ordered by the county board,* and to promptly foreclose any tax sale certificate issued to the county as soon as action can be properly brought on any such certificate." The elected part-time county attorneys apparently were never ordered by the county commissioners to foreclose and did not do so. Although the commissioners attempted to hire outside counsel to handle foreclosures they were apparently unable to procure such service at prices they were willing to pay. No doubt this state of affairs was somewhat common throughout the state and was probably the reason for the amendment of section 77-1918, R. R. S. 1943. As amended the pertinent part of section 77-1918, R. R. S. 1943, provided: "The county board shall have authority to direct the county

attorney to commence foreclosure of such liens or cer-
tificates, or it may designate another attorney to com-
mence such actions, and is authorized to pay any rea-
sonable fee for such foreclosures, to be assessed as
costs, but in the event the county attorney is designated
to bring the action the fee shall be fifty dollars for
each cause of action in addition to his salary, to be
retained by him, but it shall not be paid to the county
attorney until the decree is entered and the property
sold pursuant to such decree. No fee shall be allowed
the county attorney for such foreclosures in counties
having a population of more than one hundred thousand
inhabitants." The amendment bore the emergency
clause and became effective May 22, 1971. The statute,
both before and after the amendment, further provided
that for the willful failure or refusal to perform their
duties under the section, the affected officials, the com-
missioners, the treasurer, and the county attorney were
subject to removal from office.

Some time prior to the respondent's election in 1970,
he was approached by the county commissioners who
apparently advised him of the state of affairs with
reference to delinquent tax sales certificates and re-
spondent at that time committed himself to take action
in that area. When he took office in January of 1971,
there were pending in the county a large number of
felony count prosecutions, estimated at between 125
and 150, including large numbers of drug violations.
The early disposition or trial of these cases became
urgent when the Legislature enacted, effective April
30, 1971, a statute which directed discharge of all de-
fendants in pending felony cases who were not tried
within 6 months from April 30, or in cases thereafter
filed within 6 months from the date of the filing of
the information. During this same period of time the
respondent became aware that the period during which
foreclosures of certain of the tax sales certificates must
be commenced expired June 1, 1971.

A necessary preliminary step to such foreclosures was the making of a title search from the courthouse records in connection with each property involved. This necessitated examining the deed records, mortgage records, state and federal tax lien records, all in the office of the register of deeds, judgment records in the office of the clerk of the District Court, and where death of any party was known or suspected, an examination of the probate records in the office of the county judge. The respondent brought to the attention of the commissioners the urgency of the situation in connection with certain certificates and the commissioners authorized him to employ an outside attorney to assist him with the necessary title searches and the preparation of the petitions for foreclosure in these urgent cases. This was done and both the respondent and the retained attorney worked on these cases and they were filed on the day of the deadline. Thereafter the respondent continued to work on the foreclosures "on his own time" pursuant to the agreement with the commissioners, and by June 26, 1973, the entire foreclosure process had been completed with confirmed sales in 135 cases and redemptions in 37 cases, with 23 more cases being redeemed after that date. The net result, as testified to by the commissioners, was that more than $100,000 of delinquent taxes was collected by Scotts Bluff County. The respondent filed claims for his services as the work progressed. The first claim was filed on November 5, 1971, and the last on October 16, 1972. The claims totaled $14,640 and the amounts conformed to the agreement made with the commissioners.

At the time the respondent received a warrant for the last $2,000 of the foregoing amount, the Auditor of Public Accounts called to the attention of all parties concerned what he believed to be the illegal nature of the payments. Before the matter came to his attention through the Auditor, the respondent, however, had heard "through the grapevine" that someone was objecting

to his claims. His first reaction was one of anger and he held up filing five petitions (25 foreclosures) until the matter should be resolved. Thereafter he became aware of the restriction in the statutes and he then consulted the Attorney General of the State of Nebraska to whose attention the Auditor had called his discoveries. Thus it appeared to the respondent for the first time that the filing of the claims was premature in all cases and that in those cases where redemption had been made or would be made no fee at all could be paid even though the desired result had been accomplished and a great deal of work had in fact been done. The Auditor had taken the position that no fee at all could be paid because of the constitutional limitations prohibiting increases in compensation of a public official during his term of office.

It is quite evident the Legislature intended that the added compensation be paid to incumbent county attorneys if it constitutionally could be, otherwise there was no reason at all for the emergency clause in Laws 1971, L.B. 743. The Attorney General agreed that the payment of fees was premature, but concluded that the constitutional question was an open one. His response to the Auditor on that point was as follows: "We think an argument can be made either way on the constitutionality of the legislative act involved, L.B. 743 of the 1971 Legislature. The question has been raised in several counties by county attorneys themselves, and in each case we urged him to take the matter up with his District Judge since it involved a matter pending in that court. We have not heard that any Judge has felt that the act is unconstitutional. The argument for constitutionality is based on the fact that the Legislature in L.B. 743 struck all of the language making it a mandatory duty of the county attorney to handle tax foreclosures. The act also placed certain additional burdens on the county attorney and the county board with regard to removal from office, so the argument can rightfully

be made that the entire situation has changed and that the money may rightfully be paid to the county attorney under the reasoning followed by our court in such cases as Dunkel v. Hall County, 89 Neb. 585, Afflerbach v. York County, 95 Nebr. 611, and Iler v. Merrick County, 96 Neb. 114." It is clear that both the Committee on Inquiry and the Advisory Committee concluded that if the payment of the $50 fee during the term of an incumbent was the only question involved, the respondent would not properly be subject to discipline.

After his visit with the Attorney General in Lincoln on October 27, 1972, the respondent, on November 3, proposed in a letter to the Attorney General and to a representative of the Auditor's office that he continue the foreclosures and pursue them and others to completion and give credit on future completed work for those already redeemed prior to sale and for which he had collected but could not legally do so. This method of reimbursing the county was abandoned when members of the bar of Scotts Bluff County objected after having "been consulted by several taxpayers" and threatened suit unless immediate reimbursement was made. The respondent then, with the county commissioners as his cosignors, borrowed money from a bank and made repayment in full. He then continued the foreclosures with the results indicated.

In January 1973 these disciplinary proceedings were commenced. The county commissioners at that time sent to the Committee on Inquiry a communication in which they stated their understanding of the oral agreement for fees they had made with the respondent for doing the foreclosure work. This statement said, among other things: "About June 1st, 1971, Mr. Holscher started filing these tax foreclosures. During the last 6 months of 1971, Mr. Holscher was handling several drug cases and he was not doing much tax foreclosure work. We again crowded him to continue with these tax foreclosures.

"During 1972 Mr. Holscher continued processing the tax foreclosures. The Board has received periodic reports from Holscher on the status of the foreclosure filings. The board understood that there were a large number of certificates which had to be foreclosed and the decrees would be taken at a later time and the unredeemed properties sold. The Board was happy that these old certificates were finally being foreclosed and as a result of this, large sums were being paid to the County Treasurer on delinquent taxes as a result of these foreclosures. Mr. Holscher's claims for services were paid when presented since he had performed substantial services for the County on his own time in accordance with the previous agreement.

"Although a mistake has apparently been made and the fees should not have been paid until the properties were sold, we believe that this was an honest mistake and we believe that Mr. Holscher had no intent to deceive the County.

"Mr. Holscher has always been honest and truthful with the Board on all matters and we believe that he was honest and truthful on the tax foreclosures. He has performed his agreements with the Board in the past as we are confident that he will continue to do so in the future."

The gravamen of the charge of which the majority opinion finds the respondent guilty is that he *knowingly* made false representation of fact or law in the representation of a client, specifically in the submission of his bill for services. This writer's assertion that such finding is unfounded requires an examination of both the law and the evidence.

We first examine the law. In order to make the finding it does, the court, having first set forth the proper definition then, without any citation of authority whatsoever, departs from the generally accepted meaning of the word "knowingly." That word imports knowledge of the falsity of the facts represented to be

true. This is the generally accepted meaning of the term. It must necessarily be the meaning of the term as used in the Code of Professional Responsibility. The code itself does not define the term, probably because the meaning is essentially self-evident. It means "having knowledge." Greenway v. State, 8 Md. App. 194, 259 A. 2d 89. Disciplinary actions are, of course, not criminal proceedings, but most certainly are penal and can and do frequently result in one of the most severe of penalties, loss of the means of livelihood either for a time or permanently. Usually, also, the underlying charge involves a claimed violation of statute which defines a particular crime. The criminal law concept of the term is the most apt meaning as well as the ordinary dictionary definition. It implies awareness of the fact or the law and it is clearly distinguishable from what one ought to know or from presumed knowledge. We set forth a few definitions and applications by courts of various jurisdictions. The word "knowingly" in a statute punishing one who willfully and knowingly mutilates and destroys his selective service registration certificate means intentionally, willfully, understandingly. United States v. Smith, 249 F. Supp. 515. Under a statute providing that an officer who "knowingly" keeps any false account or makes any false entry or erasure in any account of money received by him is guilty of an offense, the quoted word imports something more than carelessness and signifies guilty knowledge or evil or fraudulent intent. People v. McHugh, 63 N. Y. S. 2d 319, 271 App. Div. 135. Under a statute making it a criminal offense to sell, offer for sale, possess or "knowingly" transport a machine gun, the quoted word signifies knowledge of existence of fact that the firearm transported is a machine gun and is not to be confused with criminal intent or with knowledge that the act is a violation of law. People v. Daniels, 118 Cal. App. 2d 340, 257 P. 2d 1038. Under a statute making it a misdemeanor to "knowingly"

make a false statement while requesting to be registered as a qualified voter, elector, who was charged with making a false statement as to his residence in registration affidavit, "knowingly" signed registration affidavit aware of the fact that it set out his residence at his office address which was a place different from his true and actual place of abode even though elector truthfully disclosed his actual residence and someone other than the elector filled in answers in the affidavit. Ingram v. State (Okla. App.), 275 P. 2d 334. Terms such as "willful" and "knowingly," in a criminal statute, are to be taken as meaning deliberately and with knowledge. Standard Oil Co. of Texas v. United States, 307 F. 2d 120. The word "knowingly" is synonymous with "intent to defraud" and means with knowledge, consciously, intelligently, willfully. United States v. Martinez, 73 F. Supp. 403, 407. Where the president of a corporation did not know of the obstruction of a public road, and had no part therein, he is not guilty of willfully or knowingly obstructing such road. State v. White, 96 Mo. App. 34, 69 S. W. 684. Doing or omitting to do a thing "knowingly" and "willfully" implies not only a knowledge of the thing, but a determination with a bad intent to do it or to omit doing it. Felton v. United States, 96 U. S. 699, 24 L. Ed. 875. In a corrupt practices statute providing that any person who shall "knowingly" make or publish or cause to be published any false statement in relation to any candidate or proposition to be voted upon, which statement is intended to or tends to affect any voting, shall be guilty of a misdemeanor, the quoted word refers to the falsity of statement, and not to the act of publishing, and to find a violation of the statute it must be determined that the violator knew that the statement published was false. Bank v. Egan, 240 Minn. 192, 60 N. W. 2d 257. Where a statute provides that a person who "knowingly" receives greater fees than the law allows shall pay to the person aggrieved 10 times the excess to be recovered

in an action on the statute, etc., it was held that the word "knowingly," when used in the prohibitory statute, is used to import a knowledge of the essential facts, from which the law presumes a knowledge of the legal consequences arising therefrom; the word being also used as in such section in the sense of "intentionally," so that where a tax collector received fees in excess of those allowed by section 6262, but in accordance with a usual custom obtaining in the town, and not with knowledge that the fees were illegal, he was not liable for the penalty. Crawford v. Joslyn, 83 Vt. 361, 76 A. 108. The word "knowingly" in a statute making it a misdemeanor to "knowingly" possess or deal in a motor vehicle which has the engine serial number removed or defaced means "having knowledge." Greenway v. State, *supra*. A person may not, however, physically close his eyes for the purpose of avoiding seeing the defacement which he otherwise knows is there. Greenway v. State, *supra*.

So much for the law. Now let us turn to the matter of the evidence in this case. As applied to the circumstances before us, what is the particular knowledge involved? The knowledge that some statement of fact or law was false. What fact? The court-appointed prosecutor tried the case upon the theory that the false representation was that the claimed file containing the words "foreclosure of tax sale certificate" was a representation that the foreclosure proceedings had been completed. The words themselves do not necessarily indicate that meaning. They can describe merely the general nature of the services which were being performed. The uncontradicted evidence in the record is that when the claims were filed and paid all parties concerned knew that the foreclosures were still in process and that none of the properties had been sold and the sales confirmed. The commissioners all testified that from time to time the respondent discussed informally the progress of the foreclosures with them.

They understood that the respondent would complete the foreclosures of all certificates which were not redeemed during the foreclosure process. They knew the properties had not been sold. They were pleased with the services because the foreclosure proceedings were resulting in the collection of large amounts of delinquent taxes. It is clear that no representation by the respondent was made that the proceedings were complete. The theory under which the prosecutor proceeded is clearly unfounded.

The majority opinion is somewhat ambiguous, but it seems to find that the certification on the claim form is false. There is no contention that any part of the claim had been paid previous to the filing of the document. This then cannot be the falsity upon which the majority relies. It must therefore be that the majority rely upon the statement "the above account is just and true." The account, of course, is true. The amounts sought conformed exactly to the amounts agreed upon by the respondent and the county commissioners. The remaining statement is "the above account is just." Is that a representation of fact? Is it a statement of law? Appearing as it does on a claim form used by the county in connection with all claims, it can only mean that the amount claimed is reasonable. The record establishes by uncontradicted evidence that the amounts are reasonable. The $50 fee is reasonable by statutory definition and the amount claimed for title searches is reasonable by reason of evidence in the record which is also wholly uncontradicted and indeed the amount is such that this court can and ought to take judicial notice of its reasonableness. Obviously the statement that the claim is just is not a statement of law. The defendant had not been asked to give an opinion on the law. He was not purporting to make such a statement and, as found by the referee, there was merely an assumption both on his part and on the part of the commissioners that the claim and payments were law-

ful. The referee correctly found that the respondent "negligently" filed the claim not knowing that he was not under the statute entitled to be paid until the sales had been made.

The majority opinion calls attention to the provisions of section 23-135.01, R. R. S. 1943, which defines the felony of filing a false claim against the county and imposes a penalty of 1 to 5 years. If, as the majority opinion says, he is not guilty of violating that statute, why is attention called to it? On the other hand, if the majority really believes that he knew he was doing wrong, surely a mere reprimand is not a sufficient discipline.

Section 77-1918, R. R. S. 1943, as amended, related wholly to the amount and method of payment of fees to the attorney. One could do the foreclosure proceedings wholly ignorant of the contents of section 77-1918, R. R. S. 1943, for the procedures are prescribed by many other provisions of the statutes in Chapters 77 and 25. I would call attention to the fact, of which we may, I believe, take judicial notice, that when the foreclosures were commenced the session laws were not yet published. No one could pull a book from his shelf and determine the details of the amendment. It would have still been necessary at that time and for a considerable time thereafter to have written to the Clerk of the Legislature to get a copy of the pertinent legislative bill.

Most lawyers would not suspect that such a bill, authorizing payment of fees, would prescribe times and conditions for payment where outside counsel is employed different from those which apply when the county attorney is employed and the fee is authorized to be paid to him. Least of all would one suspect that the law contained a provision that if the proceedings were carried clear to the point of sale and practically all the work that had been completed that all right to any compensation whatever would be forfeited by

redemption at that stage. This is the effect of the statute so far as the county attorney is concerned. Yet outside counsel can be paid any reasonable amount, either in advance or in installments as the work progresses and also without forfeiture of compensation should there be a redemption at the last moment.

I have dealt with the above matters at some length because they help demonstrate the absence of moral turpitude in the respondent's conduct. The statute, which the respondent in his ignorance violated, might well be said, when viewed in the light of accepted principles of distributive justice, is an unjust one for reasons we have discussed. That, of course, would not justify a knowing and deliberate violation of the statute by respondent, but his violation was not knowing and deliberate.

The majority opinion says, referring to the premature filing of the claim: "We cannot believe that respondent would not know this was improper procedure." What I have already said is responsive to that particular statement. I simply add the record shows that even in those few cases where the claims were filed before the petitions, the petitions had been prepared and were ready for filing. The preparation of the petitions involves a substantial amount of time and work, even though considerably more remains to be done before the fees would be fully earned.

The majority opinion characterizes the respondent's conduct in the words "so carelessly and recklessly negligent that we would have to find the respondent did it knowingly." Negligent, yes; reckless, hardly. One must judge the degree of negligence, at least in part, on the basis of the relative importance of the matter involved. Handling the foreclosures correctly was an important matter. The time of payment of fees was a relatively unimportant matter affecting principally the respondent. On a relative scale it made little difference to the county whether the fees were paid when the work began, or in

installments, or when the work was finished. The important thing was that the work proceed correctly and expeditiously.

The majority opinion attacks the respondent's predecessors in office for ignoring disciplinary rule 6-101 (A) (3). If the predecessors did, then we on our own initiative must launch disciplinary proceedings against the predecessors. The fact, however, is the county attorney has no duty under the statutes to handle the foreclosures unless "ordered" to do so by the county board. There is no evidence in the record that the predecessors were ever ordered to foreclose. The record supports a contrary inference.

Although the respondent was not charged with violating DR 6-101 (A) (2), he admits facts which make him guilty of such violation. On that basis I concur in the reprimand. If I believed that the record supported a finding of guilt of violation of DR 7-102 (A) (5) then no mere reprimand would suffice. Only suspension or disbarment would be in order. The finding of the majority and the discipline imposed by them are not consistent.

I am authorized to say that McCown, J., joins in this concurrence and dissent.